# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

FN HERSTAL, S.A., and )
FN AMERICA, LLC, )
  )
           Plaintiffs, )
v. )   Civil Action No. 1:24-CV-218
  )
STURM, RUGER & CO., INC., )
  )
           Defendant. )

## **COMPLAINT**

Plaintiffs FN Herstal, S.A. ("FNH") and FN America, LLC ("FNA") (collectively "Plaintiffs" or "FN"), for their complaint against Defendant, Sturm, Ruger & Co., Inc., ("Defendant" or "Ruger") alleges as follows:

1.      This is an action for trademark infringement under the Lanham Act, 15 U.S.C. § 1114, federal unfair competition under the Lanham Act, 15 U.S.C. § 1125, unfair and deceptive trade practices under North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*, and North Carolina common law trademark infringement and unfair competition.

## **PARTIES**

2.      Plaintiff FNH is a corporation organized and existing under the laws of Belgium, with its principal place of business located at Voie de Liège 33, B-4040 Herstal, Belgium.

3.     Plaintiff FNA is a limited liability company organized under the laws of Delaware, having a principal place of business located at 7950 Jones Branch Drive, Suite 602N, McLean, Virginia.

4.     Upon information and belief, Defendant Ruger is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1 Lacey Place, Southport, Connecticut 06890.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over the federal Lanham Act claims pursuant to 28 U.S.C. §§ 1331, 1338(a) and 15 U.S.C. § 1121, and has subject matter jurisdiction over the state law claims under 28 U.S.C. §§ 1338(b) and 1367 because such state law claims are joined with substantial and related claims under the Trademark Laws of the United States and form part of the same case or controversy.

6.     This Court has personal jurisdiction over Defendant Ruger because the company regularly conducts business in this judicial District and has committed acts of trademark infringement, unfair competition, and unfair and deceptive trade practices affecting commerce in this District including, among other things, offering for sale and selling products in this District bearing trademarks that infringe upon FN's trademark rights.

7.     Ruger's infringing products are offered for sale throughout this District and are sold to consumers throughout this District.

Case 1:24-cv-00218   Document 1   Filed 03/12/24   Page 2 of 22

8. Ruger also maintains manufacturing and customer service facilities in this District, including at least its facility in Mayodan, N.C., located in Rockingham County, where Ruger manufactures infringing goods for sale.

9. Venue properly lies in this District pursuant to 28 U.S.C. § 1391 as these causes of action arise as a result of Ruger's actions in doing and transacting business in this District and offering to sell its products or making its products available or by promoting the infringing mark to prospective purchasers within this District, and marketing its services and products to prospective purchasers within this District.

## FACTS

### FN and its SCAR Trademark

10. FNH is a long-established and famous firearms and weapons manufacturer whose history dates back to 1889. FNH manufactures and distributes a full range of firearms and accessories for defense, law enforcement, hunting, marksmanship and for persons having an interest in acquiring such firearms and accessories. FNH engages in designing, testing, manufacturing, marketing, and selling light and portable weapons, integrated weapons systems, ammunition, and associated products, with many such products in widespread worldwide distribution, often with items particularized for military and law enforcement operations. FNH continues to focus on innovation and product improvements, resulting in products being renowned and used throughout the world.

11. FNH manufactures, distributes, and sells firearms and related items under the trademark SCAR. References to FN's "SCAR Mark" will incorporate versions of the mark

3

where the mark SCAR appears as a portion of a trademark and which also appears in stylized forms or which incorporates other words, letters, numbers and/or design features. Hereinafter, the SCAR trademark including the two federal registrations for such trademark (identified hereinbelow) shall be defined as the "SCAR Mark."

12.     FNA is a wholly owned subsidiary of FNH that manufactures, assembles, markets and sells firearms and related items to commercial, law enforcement, and U.S. Government customers in the United States under the SCAR Mark. FNA also assembles and manufacturers components of the SCAR branded firearms at its Columbia, South Carolina production facility.

13.     In or around 2004, the United States Special Operations Command ("USSOCOM") awarded FNH a ten-year contract, placing a large initial order for SCAR-branded firearms. From that point forward, the U.S. Military's special forces regularly used SCAR-branded rifles.

14.     In or around 2005, FNH also began promoting its SCAR-branded rifle to law enforcement and civilians. Throughout 2005 and 2006, FNH showcased its military SCAR-branded rifle at hundreds of trade shows, including one of the largest firearms shows in the world, the Shooting, Hunting, and Outdoor Trade Show ("SHOT Show"), as well as National Rifle Association shows, the National Defense Industrial Association Small Arms forum, the Association of the United States Army show, International Chiefs of Police shows, the National Sheriff Show, the Mock Prison Riot, the SWAT Round Up, the Police and Security Expo, and others.

4

15.     After years of research, testing, and regulatory approval, FNH released the civilian version of the SCAR-branded rifle in November 2008. Since then, FN's SCAR Mark has been in continuous use in the United States. FN has extensively promoted and sold these items under the SCAR Mark in the United States and globally.

16.     FN uses the SCAR Mark in various different ways in relation to its goods and services, including on the side of the firearm itself as shown for example below.[1]



---

[1] Image captured from https://fnamerica.com/products/fn-scar-series/fn-scar-20s-nrch/, a true and correct copy of which is attached hereto as **Exhibit 1** (last accessed March 11, 2024).

17.    FN also uses the SCAR Mark on its website to promote its SCAR-branded firearms, as illustrated for example in the images below.[2]





---

[2] Images captured from https://fnamerica.com/scar/, last accessed March 11, 2024.

18.     FN also utilizes the SCAR Mark on related goods such as carrying cases for SCAR-branded firearms, as shown for example below.[3]



19.     FNH has sought to protect FN's valuable rights in the SCAR Mark for the items sold under this trademark. FNH is the owner of valid and subsisting United States Trademark registrations on the Principal Register in the United States Patent and Trademark Office, including the following: U.S. Registration No. 5,314,134, filed on April 22, 2008 and issued on October 24, 2017; and U.S. Registration No. 4,100,728, filed on

---

[3] Image captured from https://fnamerica.com/products/fn-scar-series/fn-scar-15p/, a true and correct copy of which is attached hereto as **Exhibit 2** (last accessed March 11, 2024).

7

January 13, 2011 and issued on February 21, 2012 (together "SCAR Registrations"). The SCAR Registrations are attached hereto at **Exhibit 3** and **Exhibit 4**, respectively.

20.     The SCAR Registrations are in full force and effect, and both registrations have achieved "incontestable" registration status under 15 U.S.C. § 1065.

21.     Further, reviewing courts have confirmed FN's rights in the SCAR Mark. *See FN Herstal, S.A. v. Clyde Armory, Inc.,* 123 F. Supp. 3d 1356 (M.D. Ga. 2015), *aff'd,* 838 F.3d 1071 (11th Cir. 2016), *cert. denied*.

22.     The priority date for Registration No. 5,314,134 is November 12, 2007 and the priority date for Registration No. 4,100,728  is September 8, 2010.  *See* Exhibits 1 & 2.

23.     FN's Registration No. 5,314,134 covers goods identified as "*Fire-arms, ammunition and projectiles; assault rifles; explosives; detonators; ballistic weapons; cases and holsters for rifles and handguns; noise-suppressors for guns; non-telescopic sights for firearms; firing platforms in the nature of supports*" in International Class 13.

24.     FN's rights in the SCAR Mark stretch across multiple classes of goods and services. Due to the recognition of FN's SCAR marks, consumers have demanded even non-firearms replicas of the firearm associated with the SCAR Mark. As such, Registration No. 4,100,728 covers replica firearms and related products in International Class 28.

25.     By reason of FNH's trademark registrations and FN's extensive promotion and sales of products under the SCAR Mark, the SCAR Mark has acquired great recognition and renown in the relevant trade, and prospective purchasers have come to recognize goods and services under the SCAR Mark as emanating exclusively from FN.

8

As a result of its widespread, continuous, and exclusive use of the SCAR Mark to identify its goods and FN as their source, FNH owns valid and subsisting federal statutory and common law rights to the SCAR Mark.

***Defendant Ruger's Willful Infringement of the SCAR Trademark***

26.     Notwithstanding FN's well-known and established rights in the SCAR Mark, Ruger has commenced use of the trademark "SFAR"—pronounced as the word "SFAR" rather than an abbreviation of letters—in connection with directly competing firearms to FN's SCAR-branded firearms (referred to herein collectively as the "Infringing SFAR Mark").

27.     Ruger's intentional violations of FN's rights in the SCAR Mark include Ruger referring to its own firearms products as simply the "SFAR" with no reference to the term "Ruger," as shown for example in the image below.[4]



---

[4] Image captured from https://ruger.com/products/sfar/specSheets/5611.html, a true and correct copy of which is attached hereto as **Exhibit 5** (last accessed March 11, 2024).

28.     Ruger also touts that it manufactures goods bearing the Infringing SFAR Mark at its Mayodan, NC facility (as noted in the image above at bottom-right).

29.     Third parties recognize and have pronounced the Infringing SFAR Mark as "SFAR" (not "S-F-A-R,"), which is unsurprising as Ruger is not using hyphens when promoting the Infringing SFAR Mark.

30.     Moreover, FN understands that Ruger markets its Infringing SFAR Mark in connection with the same firearms as FN that are very similar or nearly identical in size, purpose, weight, feel, color, caliber, capacity, features, and even style to the firearms marketed and sold by FN for nearly fifteen (15) years under the SCAR Mark.

31.     Specifically, Ruger is selling firearms, including rifles chambered for the .308 Winchester and 7.62 x 51mm cartridges, using the Infringing SFAR Mark in a manner that is highly likely to cause confusion with FN's SCAR Mark.

32.    For example, the top-image below is a Ruger rifle offered under the Infringing SFAR Mark,[5] while the bottom-image below is a photograph of an FN rifle offered under its SCAR Mark.[6]



**Ruger SFAR**



**FN SCAR**

33.    Ruger's use of the Infringing SFAR Mark or variations thereof with the same firearms products has caused and will continue to cause a likelihood of confusion, mistake or deception, leading consumers to believe that there is some affiliation, association, or common source of sponsorship with FN's SCAR Mark for firearms or gun related items, or with FN's products, services, or business.

---

[5] Image captured from Exhibit 5.

[6] Image captured from https://fnamerica.com/products/rifles/fn-scar-17-standard/, a true and correct copy of which is attached hereto as **Exhibit 6** (last accessed March 11, 2024).

Case 1:24-cv-00218   Document 1   Filed 03/12/24   Page 11 of 22

34.    Ruger's use of the Infringing SFAR Mark or variations thereof will cause, and is likely to cause, confusion and mistake with FN's products and services, disseminated or sold in connection with FN's SCAR Mark, or FN's business so as to deceive consumers, the trade and others, and thereby constitutes an infringement of FN's rights through unfair competition.

35.    Persons familiar with FN's well-known SCAR Mark and the business of FN and/or FN's products are likely to be confused, mistaken and/or to be deceived upon seeing Ruger's Infringing SFAR Mark or variations thereof, or are likely to believe that Ruger's business is endorsed by, sponsored by, or emanates from, or in some way is connected with FN or FN's business or with FN's SCAR Mark.

36.    In response to Ruger's infringement, FN sent demand letters and demanded that Ruger cease use of the Infringing Mark or make changes to avoid confusion. Ruger refused. Ruger continues to brazenly and willfully trade upon the goodwill of FN in the SCAR Mark.

37.    As a result of Ruger's unfair and infringing acts or misappropriations, FN has been irreparably damaged and, unless Ruger's infringing activities are enjoined, FN will continue to suffer irreparable injury and harm to their property and goodwill.

38.    Ruger's products designed or intended for sale under the Infringing SFAR Mark move through multiple channels of trade that are similar or identical to those of FN's SCAR products, and are promoted to the same or similar classes of prospective purchasers or end-users.

12

39.     For example, FN understands that the Ruger products sold under the Infringing SFAR Mark are advertised at the same trade shows such as the SHOT show, on the same websites or other online or print articles and publications, at the same stores, by the same reviewers, and through the same vendors as the products sold by FN in connection with the longstanding SCAR Mark.

40.     By way of further example, photographs of Ruger using the Infringing SFAR Mark to promote its products (namely, rifles) at the 2024 SHOT show are attached hereto as **Exhibit 7**, a snapshot of which is included hereinbelow. As the images show, Ruger is utilizing SFAR as a standalone mark on both marketing collateral and on hangtags for its infringing SFAR-branded products (displayed below the television).



41.     Ruger also uses the Infringing SFAR Mark on other marketing collateral, including posters that it distributes to relevant consumers. A portion of one such poster with the Infringing SFAR Mark is included below and attached as **Exhibit 8**.



42.     FN further understands that Ruger's products sold under the Infringing SFAR Mark may be offered for sale on the same websites, through the same distributors, and even at the same brick and mortar stores as the products sold by FN in connection with the SCAR Mark.

43.     Ruger's use of the Infringing SFAR Mark or variations thereof is without the FN's consent or permission.

44.     Ruger's use of the Infringing SFAR Mark or variations thereof will continue to damage and diminish sales and reduce the value of FN's SCAR Mark.

45.     Upon information and belief, Ruger, with knowledge of FN's SCAR Mark and in willful disregard of FN's rights, is engaging in a deliberate course of conduct designed to appropriate the goodwill associated with FN's SCAR Mark. Ruger's actions will irreparably harm FN by diminishing the reputation and goodwill of FN's SCAR Mark.

14

The public association of the SCAR Mark with FN's products is so great that Ruger's use of any variation of its Infringing SFAR Mark will inevitably cause consumers to mistakenly believe that the Ruger products sold under the Infringing SFAR Mark are produced, authorized, licensed, or sponsored by FN or that Ruger is somehow connected with FN or FN's SCAR Mark.

46.     Ruger has been engaged in the manufacture, distribution, provision, advertising, promotion, offering for sale, and sale of firearms using the Infringing SFAR Mark throughout the United States. *See, e.g.,* Exhibit 3. Ruger is even using a superscript "TM" symbol after the Infringing SFAR Mark, including on its website and in its own marketing and promotional materials. *See id.*

47.     The sale or prospective sale by Ruger of products or services under the Infringing SFAR Mark or variations thereof will also blur and diminish the distinctive quality of FN's SCAR Mark and lessen FN's and the public's capacity to identify and distinguish the products and services of FN versus Ruger.

## <u>COUNT I</u>
**Infringement of FN's Federally Registered Trademarks**
**Lanham Act – 15 U.S.C. § 1114**

48.     FN realleges and incorporates herein by reference the allegations contained in paragraphs 1-47 of this Complaint as if set forth in full.

49.     Plaintiff FNH is the registered owner of the SCAR Registrations.

50.     The SCAR Registrations are incontestable pursuant to 15 U.S.C. § 1065.

15

51.     FN's SCAR Mark is valid and subsisting, and well recognized among relevant consumers as being associated with FN, and as a symbol of the goodwill of FN and its products.

52.     Ruger's unauthorized use in commerce of the Infringing SFAR Mark or variations thereof and as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Ruger's goods, and is likely to cause consumers to believe, contrary to fact, that Ruger's goods/services are sold, authorized, endorsed, or sponsored by FN, or that Ruger is in some way affiliated with or sponsored by FN. Ruger's conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

53.     Ruger has committed the foregoing acts of infringement, and continues to infringe today, with full knowledge of FN's prior rights in the SCAR Mark and with the willful intent to cause confusion and trade on FN's goodwill.

54.     Ruger has used and is continuing to use the Infringing SFAR Mark despite being notified of FN's objection to Ruger's use, thereby demonstrating its intent and purpose to trade upon the goodwill of FN's SCAR Mark.

55.     Ruger's conduct is causing immediate and irreparable harm and injury to FN and to FN's goodwill and reputation and will continue to both damage FN and confuse the public unless enjoined by this court. FN has no adequate remedy at law.

16

## COUNT II
## Unfair Competition
## Lanham Act – 15 U.S.C. §§ 1125(a)

56.     FN realleges and incorporates herein by reference the allegations contained in paragraphs 1-55 of this Complaint as if set forth in full.

57.     Ruger's unauthorized use in commerce of the Infringing SFAR Mark constitutes a false designation of origin and a false or misleading representation of fact that is likely to confuse or deceive consumers, or cause consumers to believe mistakenly that Ruger and/or its goods are made or produced and/or its services are offered by FN or are otherwise affiliated, connected, or associated with, or sponsored or approved by FN, and therefore constitutes unfair competition pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1125(a).

58.     Ruger's use in commerce of the Infringing SFAR Mark, in connection with Ruger's marketing, distribution, promotion and sale to the consuming public of Ruger's products constitutes a misappropriation of the distinguishing and identifying features which FN created through substantial effort and expense, thus evoking from the trade, consumers and others an immediate commercial impression or association favorable to Ruger, based on and derived from FN's SCAR Mark and the goodwill associated therein.

59.     Ruger's use of the Infringing SFAR Mark constitutes false representations that Ruger has some connection or association with, or sponsorship by FN, and that the services and products identified with FN are available from Ruger.

17

60.     Said actions of Ruger constitute violations of 15 U.S.C. §1125(a) in that such false designation and representations of origin and quality are used on or in connection with the products that Ruger causes to enter into, or to affect commerce, which may lawfully be regulated by Congress.

61.     Ruger has used and is continuing to use the Infringing SFAR Mark with full knowledge of FN's trademark rights in the SCAR Mark, and after FN's objection to Ruger's continued use of the Infringing SFAR Mark. Upon information and belief, said actions by Ruger are with an intent and purpose to trade upon the goodwill of FN, and are thus willful and deliberate.

62.     Ruger's conduct is causing immediate and irreparable harm and injury to FN and to FN's goodwill and reputation and will continue to both damage FN and confuse the public unless enjoined by this court. FN has no adequate remedy at law.

## COUNT III
**Violation of North Carolina Unfair and Deceptive Trade Practices Act**
**N.C. Gen. Stat. § 75-1.1, *et seq.***

63.     FN realleges and incorporates herein by reference the allegations contained in paragraphs 1-62 of this Complaint as if set forth in full.

64.     At all relevant times, Ruger has been and continues to be engaged in commerce in North Carolina as defined by chapter 75 of the North Carolina General Statutes, including at least through the manufacture, marketing, and sale of firearms bearing the Infringing SFAR Mark to relevant consumers in North Carolina, including in this District.

18

65.     The wrongful conduct of Ruger in commerce in North Carolina and elsewhere, as alleged herein and above, constitutes unfair and/or deceptive acts or practices, which has injured and will continue to injury Plaintiffs and which as resulted and will continue to result in damages to Plaintiffs.

66.     As a direct and proximate result of this unfair and deceptive conduct, Plaintiffs have been damaged and are entitled to a judgment against Ruger for actual damages, and those damages are to be trebled pursuant to N.C. Gen. Stat. § 75-16.

67.     Plaintiffs are also entitled to an award of its attorneys' fees pursuant to § 75-16.1.

## COUNT IV
### Trademark Infringement Under North Carolina Common Law

68.     FN realleges and incorporates herein by reference the allegations contained in paragraphs 1-67 of this Complaint as if set out in full.

69.     In addition to Plaintiffs rights in the SCAR Marks covered by the SCAR Registrations, Plaintiffs also own common law rights in the SCAR Marks by virtue of the exclusive and continuous use by Plaintiffs of the SCAR Marks in relation to Plaintiffs goods and services, including firearms and related goods and services.

70.     Plaintiffs SCAR Marks are associated in the minds of relevant consumers with Plaintiffs' provision of its firearms and related goods and services.

71.     Ruger's use of the Infringing SFAR Mark in relation to identical goods and services is causing and is likely to continue to cause substantial consumer confusion, and infringes Plaintiffs' common law rights in its SCAR Marks.

19

72.     Ruger's wrongful acts have caused and will continue to cause harm and damage to Plaintiffs.

73.     Ruger's wrongful acts have caused and will continue to cause irreparable injury and harm to Plaintiffs if Ruger is not restrained by this Court from further violation of Plaintiffs' rights.

74.     Plaintiffs' remedy at law is not by itself adequate, and Plaintiffs have suffered and will continue to suffer irreparable harm such that Plaintiffs are entitled to injunctive relief.

## DEMAND FOR JURY TRIAL

75.     FN requests trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, FN prays for judgment as follows:

1.     That Ruger, its respective directors, officers, agents and employees, successors and assigns and all others acting in knowing concert with them, be permanently restrained and enjoined from:

a)     marketing, advertising, displaying, selling, or distributing products using the Infringing SFAR Mark or any variations thereof, alone or in combination with any other word, design or name, or any other mark which incorporates these marks or a confusingly similar version thereof in a manner which is likely to cause confusion, mistake or deception with FN's SCAR Mark;

b)     otherwise infringing FN's SCAR Mark;

20

c)      engaging in any other or further acts of unfair competition against FN;

d)      engaging in any deceptive trade practices in the offering of goods under the Infringing SFAR Mark or any other variations or simulations of FN's SCAR Mark;

e)      engaging in any deceptive business practice in the offering of goods under the Infringing SFAR Mark or any other variations or simulations of FN's SCAR Mark; and

f)      filing any trademark applications for the Infringing SFAR Mark or any other variations or simulations of FN's SCAR Mark.

2.      That Ruger be directed to deliver up for destruction all labels, signs, prints, packages, wrappers, receptacles, advertisements, firearms, or other materials in its possession or custody and control which are within the United States of America, its territories and possessions, which display the Infringing SFAR Mark or any other variations or simulations of FN's SCAR Mark, and all means of making or affixing the same pursuant to Section 36 of the Lanham Act, 15 U.S.C. § 1118.

3.      That FN be awarded a full disgorgement of the profits secured by Ruger as a result of its unlawful activities pursuant to 15 U.S.C. § 1117, and that said award be trebled as provided by law.

4.      That FN be awarded its actual and consequential damages in an amount according to proof at trial.

5.     That FN be awarded treble damages as provided under 15 U.S.C. § 1117 and/or N.C. Gen. Stat. § 75-16.

6.     That FN be awarded their costs incurred in this action, including its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and/or N.C. Gen. Stat. § 75-16.1.

7.     That FN be awarded pre-judgement and post judgement interest and costs as allowed by law.

8.     That Ruger be required to file with this Court and serve upon FN within thirty (30) days after entry of the order of judgment a report, in writing and under oath, setting forth the manner and form of Ruger's compliance with the Court's order.

9.     That FN have such other and further relief as is warranted by the facts established at trial or which this Court may deem as just and equitable.

This 12th day of March, 2024.

Respectfully submitted,

**Williams Mullen, P.C.**

By: */Robert C. Van Arnam/*

Robert C. Van Arnam, NC Bar No. 28838
Andrew R. Shores, NC Bar No. 46600
301 Fayetteville Street, Suite 1700
Raleigh, NC  27601
Telephone: (919) 981-4055
Facsimile: (919) 981-4300
Email: RVanArnam@williamsmullen.com
Email: AShores@williamsmullen.com

*Attorneys for Plaintiffs*

22