# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

FN HERSTAL, S.A., and       )
FN AMERICA, LLC,          )
                               )
              Plaintiffs,    )
v.                             )    Civil Action No.: 1:24-cv-218-LCB-JEP
                               )
STURM, RUGER & CO., INC.,    )
                               )
              Defendant.    )

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56 and L.R. 56.1, Plaintiffs FN Herstal, S.A. and FN America, LLC (collectively "FN"), through counsel, respectfully submit this Memorandum of Law in Support for their Motion for Partial Summary Judgment.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION ................................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 2

   I.  FN'S SCAR Trademark .............................................................................. 2

   II. Ruger launches infringing SFAR-branded firearm. .................................. 4

QUESTIONS PRESENTED ..................................................................................... 6

SUMMARY JUDGMENT STANDARD .................................................................. 6

ARGUMENT ............................................................................................................ 7

   I.  FN is entitled to partial summary judgment that its SCAR Trademark is
     "valid and protectable." ............................................................................. 7

      A.    Legal Standards for Incontestable Registrations. ....................... 10

      B.    FN's Registrations are conclusive evidence of  ownership and
           validity. ........................................................................................ 11

   II. There are no genuine issues of fact as to any of Ruger's Affirmative
     Defenses. .................................................................................................... 13

      A.    Ruger's "laches" defense fails because FN did not "unreasonably or
           inexcusably" delay in asserting its rights in the SCAR Trademark,
           and Ruger was not prejudiced by any alleged delay. ................. 14

      B.    Ruger cannot establish Estoppel by Acquiescence. .................... 21

      C.    There are no facts to support Ruger's pleaded "unclean hands"
           Affirmative Defense. ................................................................... 22

CONCLUSION ....................................................................................................... 23

CERTIFICATE OF COMPLIANCE ...................................................................... 24

CERTIFICATE OF SERVICE ............................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*adidas Am., Inc. v. Payless Shoesource, Inc.*,
529 F. Supp. 2d 1215 (D. Or. 2007) ............................................................................. 22

*Adventis, Inc. v. Consol. Prop. Holdings, Inc.*,
124 F. App'x 169 (4th Cir. 2005) .................................................................................. 8

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...................................................................................................... 6

*Anheuser-Busch, Inc. v. L.&L. Wings, Inc.*,
962 F.2d 316 (4th Cir. 1992) ........................................................................................ 8

*Belmora LLC v. Bayer Consumer Care AG*,
987 F.3d 284 (4th Cir. 2021) ......................................................................... 14, 15, 19

*Bon Vivant Catering, Inc. v. Duke Univ.*,
No. 13-cv-728, 2016 WL 3149725 (M.D.N.C. June 3, 2016) ................................... 8, 9

*CareFirst of Md., Inc. v. First Care, P.C.*,
434 F.3d 263 (4th Cir. 2006) ........................................................................................ 6

*Choice Hotels Int'l, Inc. v. A Royal Touch Hospitality, LLC (NC)*,
409 F. Supp. 3d 559 (W.D. Va. 2019) ........................................................................... 6

*Djarum v. Dhanraj Imports, Inc.*,
876 F. Supp. 2d 664 (W.D.N.C. 2012) .......................................................................... 8

*Elvis Presley Enters. v. Capece*,
141 F.3d 188 (5th Cir. 1998) ....................................................................................... 18

*Fleet Feet, Inc. v. Nike, Inc.*,
419 F. Supp. 3d 919 (M.D.N.C. 2019) .......................................................................... 7

*FN Herstal SA v. Clyde Armory Inc.*,
838 F.3d 1071 (11th Cir. 2016) ................................................................................. 4, 9

*GoSecure Inc. v. Bhandari*,
637 F. Supp. 3d 368 (E.D. Va. 2022) ................................................................. 7, 16, 21

ii

*High Volatage Beverages, LLC v. Coca-Cola Co.*,
  No. 3:08-cv-367, 2011 WL 831523 (W.D.N.C. Mar. 3, 2011) .................... 7, 14, 15, 16

*JTH Tax, Inc. v. H & R Block Eastern Tax Servs., Inc.*,
  128 F. Supp. 2d 926 (E.D. Va. 2001) ................................................................ 22

*Lyons P'ship, L.P. v. Morris Costumes, Inc.*,
  243 F.3d 789 (4th Cir. 2001) ................................................................... 14, 15

*Moke Am. LLC v. Moke Int'l Ltd.*,
  126 F.4th 263 (4th Cir. 2025) ..................................................................... 10

*Newport News Holdings Corp. v. Virtual City Vision, Inc.*,
  650 F.3d 423 (4th Cir. 2011) ...................................................................... 21

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*,
  469 U.S. 189 (1985) ......................................................................... 9, 11, 12

*PBM Prods., LLC v. Mead Johnson & Co.*,
  639 F.3d 111 (4th Cir. 2011) ...................................................................... 14

*Perini Corp. v. Perini Const., Inc.*,
  715 F. Supp. 719 (D. Md. 1989) ........................................................... 17, 18, 19

*Peterman v. Ramod Brewers, LLC*,
  No. 4:21-CV-156, 2023 WL 11812284 (E.D.N.C. Mar. 8, 2023) ................................ 22

*Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*,
  673 F.3d 294 (4th Cir. 2012) ............................................................... passim

*Retail Servs., Inc. v. Freebies Publ'g*,
  364 F.3d 535 (4th Cir. 2004) ............................................................. 10, 11, 12

*rev'd on other grounds*,
  915 F.2d 121 (4th Cir. 1990) ...................................................................... 18

*SafeRack, LLC v. Bullard Co.*,
  350 F. Supp. 3d 438 (D.S.C. 2018) .................................................................. 7

*Sara Lee Corp. v. Kayser-Roth Corp.*,
  81 F.3d 455 (4th Cir. 1996) .................................................................... 18, 21

*Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*,
  743 F.2d 1039 (4th Cir. 1984) ..................................................................... 21

iii

*Synergistic Int'l, L.L.C. v. Korman*,
    No. 2:05-cv-049, 2007 WL 517677 (E.D. Va. 2007)....................................................14

*Tisch Hotels, Inc. v. Americana Inn, Inc.*,
    350 F.2d 609 (7th Cir. 1965) .......................................................................................20

*Turner v. U.S.*,
    736 F.3d 274 (4th Cir. 2013) .........................................................................................6

*Universal Furniture Int'l Inc. v. Collezione Europa USA*,
    No. 1:04–cv–977, 2007 WL 2712926, (M.D.N.C. Sept. 14, 2007) ...............................8

*U.S. Olympic Comm. v. Olympic Supply, Inc.*,
    655 F. Supp. 2d 599 (D. Md. 2009)..............................................................................19

*Variety Stores, Inc. v. Wal-Mart Stores, Inc.*,
    888 F.3d 651 (4th Cir. 2018) .....................................................................................7, 8

*Vineberg v. Bissonnette*,
    548 F.3d 50 (1st Cir. 2008) .........................................................................................13

*Westmont Living, Inc. v. Retirement Unlimited, Inc.*,
    132 F.4th 288, No. 23-2248, 2025 WL 838395 (4th Cir. Mar. 18, 2025)..................7, 9

*What-A-Burger of Va., Inc. v. Whataburger, Inc. of Corpus Christi, Tx.*,
    357 F.3d 441 (4th Cir. 2004) ..................................................................................14, 21

*Williams v. Griffin*,
    952 F.2d 820 (4th Cir. 1991) .........................................................................................6

*Wilson v. Tessmer Law Firm, PLLC*,
    483 F. Supp. 3d 416 (W.D. Tex. 2020) ........................................................................18

**Statutes**

15 U.S.C. § 1065 ............................................................................................4, 10, 11

15 U.S.C. § 1114 ......................................................................................................7

15 U.S.C. § 1115(a) .................................................................................................10

15 U.S.C. § 1115(b) .................................................................................................10

15 U.S.C. § 1125 ......................................................................................................7

**Rules**

Fed. R. Civ. P. 56(a) .............................................................................. 6

Fed. R. Evid. 408 .................................................................................. 5

**Other Authorities**

4 *McCarthy on Trademarks and Unfair Competition* § 31:12 .................................... 19, 20

4 *McCarthy on Trademarks and Unfair Competition* § 31:06 .......................................... 19

**INTRODUCTION**

Over the last two decades, Plaintiffs FN Herstal, and its U.S. affiliate FN America, have invested substantially in building a strong, highly recognizable, and valuable brand associated with its **SCAR** modern sporting rifle. Attempting to trade off the extensive goodwill developed by FN, Ruger recently introduced a knock-off modern sporting rifle—this one branded under the virtually identical mark **SFAR**. Ruger, a direct competitor to FN, did not arrive at this name by accident. It knew of FN's widely recognized SCAR Trademark, knew that FN owned registered trademark rights in the SCAR Trademark, and proceeded anyway.[1]

At trial, FN will demonstrate to the jury that Ruger's use of the infringing SFAR name is likely to cause consumer confusion, has in fact caused actual consumer confusion, and thus infringes on FN's valuable trademark rights. But to streamline issues for trial, FN seeks partial summary judgment on two unassailable issues for which there are no genuine issues of material fact.

First, because FN's trademark registrations for its SCAR Trademark have achieved incontestable status, they constitute ***conclusive*** evidence of the first element of trademark infringement: that FN owns a valid and protectable trademark in SCAR. FN is therefore entitled to summary judgment that this first element is satisfied.

---

[1] Indeed, this is not the first time that FN was obligated to enforce its trademark rights against Ruger. *See FN Herstal, S.A. v. Strum, Ruger & Co., Inc.*, Case No. 1:20-CV0249 (E.D. Va. 2020) (asserting rights in FN's "FIVE-SEVEN" trademark).

1

Second, the record is devoid of any evidence to support Ruger's Affirmative Defenses to liability, and they should be dismissed as a matter of law. In particular, Ruger contends that FN's claims are barred by "the equitable doctrines of laches and estoppel," "waiver," and "unclean hands." But Ruger cannot demonstrate that any purported delay by FN in filing suit, or any other act by FN, caused Ruger any undue prejudice. Lacking any such prejudice, and given that nothing FN did was "inexcusable or unreasonable," Ruger's Affirmative Defenses to liability all fail as a matter of law.

## FACTUAL BACKGROUND

### I.    FN'S SCAR Trademark

FN established its rights in the SCAR Trademark more than twenty years ago when it first developed and sold its famous SCAR rifle. *See* Ex. 1, FN Press Release dated March 2, 2006 (outlining timeline of SCAR Development and commercial release); Ex. 2, Exemplary SCAR Advertising from 2005. Initially developed for the military, *see* Ex. 1, FN subsequently began promoting its SCAR rifle to law enforcement and civilians at least as early as 2005. *See* Exs. 1-2; *see also* Ex. 3, 2009 article about SCAR rifle noting that SCAR "can be yours today," and characterizing SCAR rifle as "The Everyman's Rifle," at 4. Since then, FN has consistently and exclusively promoted its SCAR rifle under its well-known SCAR trademark. *See generally id.*; *see also* Ex. 4 (old SCAR Pamphlet); Ex. 5 (examples of current advertising on FN website); Ex. 6 (examples of influencer advertising); Ex. 7 (Exemplary SCAR Advertisement).

2



Doc. 1 at ¶ 17.

To protect its rights in the SCAR Trademark, FN registered its rights with the U.S. Patent and Trademark Office ("Trademark Office"). Specifically, Plaintiff FN Herstal is the owner of U.S. Trademark Registration Nos. 4,100,728 (the "728 Registration") and 5,314,134 (the "134 Registration"), each for the word mark "SCAR." *See* Docs. 1-3 & 1-4 (collectively, the "SCAR Registrations"). Most applicable here is the 134 Registration covering goods in International Class 013, including "Fire-arms" and more particularly, "assault rifles." Doc. 1-3 at 2.[2] FN's corresponding 728 Registration covers goods in International Class 028, including replica firearms and model kits. Doc. 1-4 at 2.

FN filed the application leading to its 134 Registration on April 22, 2008. Doc. 1-3 at 2. The application was initially challenged by a competitor, resulting in a prior district court litigation. There, the district court found, and the Eleventh Circuit later affirmed,

---

[2] All "Doc." cites are to the ECF page number unless otherwise indicated.

that FN had developed valid and protectable rights in its SCAR Trademark at least as early as the two-year period preceding 2006. *See FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1083-86 (11th Cir. 2016). With the litigation disposed, the Trademark Office issued the 134 Registration on October 24, 2017. The application leading to the 728 Registration proceeded without opposition. It was filed January 13, 2011, and issued February 21, 2012.

Five years following registration, FN timely filed Affidavits of Incontestability with the Trademark Office. *See* Ex. 8 at 3-11 (728 Registration Affidavit filed February 13, 2018); Ex. 9 at 3-11 (134 Registration Affidavit filed November 2, 2022). The Trademark Office reviewed and accepted both of the Affidavits. Ex. 8 at 1-2 (728 Registration); Ex. 9 at 1-2 (134 Registration).  The SCAR Registrations have each therefore attained "incontestable" status. 15 U.S.C. § 1065.

## II.    Ruger launches infringing SFAR-branded firearm.

In September 2022, FN learned of the launch of Ruger's newest modern sporting rifle product, which Ruger branded as the SFAR. Ex. 10, Ruger "New Products" Page featuring SFAR; Ex. 11, Exemplary Ruger Website page; Ex. 12, Ruger "Distributor Update" announcing infringing SFAR firearm launch dated Sept. 6, 2022. From its initial launch, Ruger utilized the "tm" symbol with its SFAR name to indicate it was using the "SFAR" name as a brand, rather than as an initialism or some other non-trademark use. *Id.*

4

Concluding that the name SFAR—which is virtually identical to FN's SCAR trademark—would be likely to cause consumer confusion among FN and Ruger's overlapping consumers shopping for identical modern sporting rifle goods, FN promptly sent a cease and desist letter to Ruger on October 6, 2022. Doc. 14, Ruger Answer at ¶ 36 (admitting receipt of FN's letter). Ruger responded in the weeks that followed, refusing to cease use of the infringing SFAR Mark. *Id.* Thereafter, counsel for the Parties exchanged additional correspondence to explore the possibility of settlement. Those efforts stalled in approximately March 2023 when Ruger refused to make any changes to its SFAR Mark. *Id.* (acknowledging that the parties exchanged further "written correspondence" into a period preceding less than a year before FN filed suit).[3] With settlement efforts exhausted, FN initiated this lawsuit.

On March 12, 2024, FN filed its Complaint against Ruger. Doc. 1. Ruger filed its Answer with numerous defenses including the Affirmative Defenses at issue here on April 5, 2024. Doc. 14.

---

[3] FN does not attach the demand letters or subsequent settlement communications because Fed. R. Evid. 408 generally makes consideration of such materials improper. To the extent Ruger challenges the timeline of such communications, however, FN reserves the right to provide such supporting evidence to the Court for the limited purpose of establishing the relevant timeline. *See Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 306 (4th Cir. 2012) (recognizing that **Error! Bookmark not defined.**Rule 408 does not preclude evidence to show the general timing and "fact" that settlement efforts took place).

## QUESTIONS PRESENTED

1.  Whether FN's incontestable SCAR Registrations establish as a matter of law that FN owns a valid and protectable mark in SCAR. **YES**

2.  Whether Ruger's Affirmative Defense of "laches and estoppel," "waiver," and "unclean hands" should be rejected and dismissed as a matter of law. **YES**

## SUMMARY JUDGMENT STANDARD

Summary judgment must be granted if the movant shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Turner v. U.S.*, 736 F.3d 274, 281 (4th Cir. 2013) (affirming grant of summary judgment). In opposing a motion for summary judgment, the nonmoving party must show more than the mere existence of some alleged factual dispute between the parties and must rely on more than conclusory allegations, mere speculation, or the "mere existence of a scintilla of evidence." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment is therefore appropriate if the record as a whole could not lead a rational trier of fact to find in favor of the nonmovant. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

Based on this standard, courts have awarded summary judgment as to validity and ownership of a trademark, including where the plaintiff relied on an incontestable trademark registration. *See, e.g.*, *CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006) (affirming district court's finding of ownership of valid trademark based on incontestable registration alone); *Choice Hotels Int'l, Inc. v. A Royal Touch Hospitality, LLC (NC)*, 409 F. Supp. 3d 559, 565 (W.D. Va. 2019) (same). Summary

6

judgment is also an appropriate vehicle for rejecting and dismissing unsupported affirmative defenses, including laches, acquiescence/waiver, and unclean hands. *See, e.g.*, *High Volatage Beverages, LLC v. Coca-Cola Co.*, No. 3:08-cv-367, 2011 WL 831523, at *4 (W.D.N.C. Mar. 3, 2011) (granting summary judgment and holding that "TCCC's affirmative defense of laches must fail."); *GoSecure Inc. v. Bhandari*, 637 F. Supp. 3d 368, 379 (E.D. Va. 2022) ("Defendant's acquiescence defense also fails as a matter of law"); *SafeRack, LLC v. Bullard Co.*, 350 F. Supp. 3d 438, 452-55 (D.S.C. 2018) (rejecting various affirmative defenses at summary judgment).

## **ARGUMENT**

### I.  **FN is entitled to partial summary judgment that its SCAR Trademark is "valid and protectable."**

To establish infringement of FN's registered SCAR trademark under 15 U.S.C. § 1114, FN must establish that (1) it owns a valid and protectable mark, and (2) Ruger's use of a "colorable imitation" of that mark creates "a likelihood of confusion." *Westmont Living, Inc. v. Retirement Unlimited, Inc.*, 132 F.4th 288, No. 23-2248, 2025 WL 838395, at *5 (4th Cir. Mar. 18, 2025) (quoting *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 660 (4th Cir. 2018)). The same is true of FN's federal common law trademark infringement claim under 15 U.S.C. § 1125, as well as FN's state law trademark infringement and Unfair and Deceptive Trade Practices Act claims. *See id.* (confirming elements for § 1125); *Fleet Feet, Inc. v. Nike, Inc.*, 419 F. Supp. 3d 919, 925 n.1 (M.D.N.C. 2019) (recognizing that North Carolina "state common-law trademark infringement and unfair competition" claims "require proof of the same elements");

7

*Djarum v. Dhanraj Imports, Inc.*, 876 F. Supp. 2d 664, 668 (W.D.N.C. 2012) ("North Carolina's Unfair and Deceptive Trade Practices Act prohibits the same type of activity that the Lanham Act prohibits because trademark infringement and false designation undercut the mark holder's goodwill and the consumers' ability to distinguish among products." (quoting *Universal Furniture Int'l Inc. v. Collezione Europa USA, Inc.*, 1:04–cv–977, 2007 WL 2712926, at *15, (M.D.N.C. Sept. 14, 2007))).

Whether a competitor's use of a "colorable imitation" will create a "likelihood of confusion" is a highly factual inquiry that is generally not appropriate for summary judgment. *See, e.g.*, *Variety Stores, Inc.*, 888 F.3d at 666-67 (vacating summary judgment likelihood of confusion determination and recognizing that "the likelihood of consumer confusion is an 'inherently factual' issue that depends on the unique facts and circumstances of each case." (quoting *Anheuser-Busch, Inc. v. L.&L. Wings, Inc.*, 962 F.2d 316, 318 (4th Cir. 1992)); *Adventis, Inc. v. Consol. Prop. Holdings, Inc.*, 124 F. App'x 169, 171 n.3 (4th Cir. 2005) ("This court has consistently held that the likelihood of confusion issue in an infringement claim is an inherently factual determination."). Indeed, a likelihood of confusion determination requires consideration and balancing of ***nine different fact-intensive factors***, rendering it "frequently a fairly disputed issue of fact on which reasonable minds may differ" and "a matter of varying human reactions to situations incapable of exact appraisal." *Variety Stores, Inc.*, 888 F.3d at 660; *accord Bon Vivant Catering, Inc. v. Duke Univ.*, No. 13-cv-728, 2016 WL 3149725, at *16 (M.D.N.C. June 3, 2016) (declining to decide likelihood of confusion at summary

8

judgment and holding that "the jury is best suited to conduct the likelihood of confusion analysis by weighing the above factors"). Accordingly, FN will demonstrate at trial that Ruger's use of the infringing SFAR Mark creates a likelihood of confusion, where the jury can appropriately weigh and balance the evidence for each of the several likelihood of confusion factors. *See id.*

There is no dispute, however, regarding the facts material to the other element of trademark infringement: whether FN "owns a valid and protectable mark" for SCAR. *Westmont Living, Inc.*, 2025 WL 838395, at *5. FN's ownership of the SCAR Trademark, as well as the SCAR Trademark's validity, are each ***conclusively*** established by FN's ownership of its incontestable SCAR Registrations. *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 195 (1985). And not only do FN's SCAR Registrations establish this element as a matter of law, but it is consistent with previous judicial holdings that FN's SCAR Trademark is valid and protectable, issued before the SCAR Registrations became incontestable. *See generally FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1083-86 (11th Cir. 2016) (affirming District Court's holding that FN's SCAR Trademark was valid and had "acquired secondary meaning at some point during the nearly two-year period before Clyde Armory began using SCAR–Stock in September 2006"). Accordingly, as detailed below, FN is entitled to partial summary judgment that it owns a valid and protectable mark for SCAR.

9

## A.  Incontestable Registrations are "conclusive" evidence of ownership and validity.

The Lanham Act provides that a registration "owned by a party to an action shall be admissible in evidence," and that the registration shall evidence "the validity of the registered mark and of the registration of the mark, the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration." 15 U.S.C. § 1115(a); *see also Moke Am. LLC v. Moke Int'l Ltd.*, 126 F.4th 263, 272 (4th Cir. 2025) ("registrant enjoys the rebuttable presumptions of the mark's validity, the registration's validity, and the registrant's ownership of the mark.").

But here, FN's SCAR Trademark is not just registered with the Trademark Office, the Registrations are "incontestable." *See* Exs. 8-9; 15 U.S.C. § 1065; *see also* Doc. 14, Ruger Answer at ¶ 20 (admitting that the SCAR Registrations "are identified as having achieved incontestable status" by the Trademark Office). Where a registered trademark becomes incontestable pursuant to 15 U.S.C. § 1065, "the registration ***shall be conclusive evidence*** of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce."[4] 15 U.S.C. § 1115(b); *accord Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 548 (4th Cir. 2004), *abrogation on other grounds recognized by Verisign, Inc. v. XYZ.com LLC*, 891 F.3d 481, 488 (4th Cir. 2018).

---

[4] All emphasis added unless otherwise indicated.

While an incontestable registration may be subject to challenge that the mark has become generic or the status was procured by fraud, it is otherwise immune from validity challenges—including any challenge that the mark is merely descriptive and lacking secondary meaning. *See Park 'N Fly, Inc.*, 469 U.S. at 195 ("The language of the Lanham Act also refutes any conclusion that an incontestable mark may be challenged as merely descriptive."); *Retail Servs., Inc.*, 364 F.3d at 548 ("If a registered trademark becomes incontestable, the rebuttable presumption that a registered mark has acquired secondary meaning becomes 'conclusive evidence of the registrant's exclusive right to use the registered mark'").

To obtain incontestability, the Lanham Act first requires registration and continuous use for five years. 15 U.S.C. § 1065. During that period, there can be "no final decision adverse to the owner's claim of ownership," and "no proceeding involving said rights pending in the [Trademark Office] or in a court and not finally disposed of." *Id.* The Registrant is also required to timely submit an affidavit to the Trademark Office following the five-year period attesting to the foregoing, and the Registrant's ongoing and continuous use of the mark. *Id.* FN met all requirements to demonstrate the SCAR Registrations are entitled to incontestable status, and there is no evidence of record sufficient to challenge such status.

**B.     FN's Registrations establish ownership and validity as a matter of law.**

FN timely filed, and the Trademark Office accepted, its Affidavits in support of incontestability for each of its Registrations. *See* Exs. 8-9. The Registrations therefore

11

constitute **conclusive** evidence of FN's ownership of a valid trademark for SCAR. *See*

*Retail Servs., Inc.*, 364 F.3d at 548.

The only bases for challenging validity of the now-incontestable SCAR

Trademark are inapplicable here. For example, there is no evidence to support a claim

that SCAR has become a generic term for "fire-arms" or "assault rifles." *See Park 'N Fly,*

*Inc.*, 469 U.S. at 195 (noting that an "incontestable that becomes generic may be canceled

at any time"). Nor has Ruger made such a claim. *See* Doc. 14, Answer and Affirmative

Defenses at 12 (omitting any affirmative defense based on genericness). Incontestable

marks may also be challenged if the mark has become "abandoned, if it is being used to

misrepresent the source of the goods or services in connection with which it is used, or if

it was obtained fraudulently." *Park 'N Fly, Inc.*, 469 U.S. at 195. But again, there is no

evidence to support any of these exceptions, and Ruger has not claimed otherwise.

Indeed, FN has continuously and exclusively used its SCAR Trademark since at least the

mid-2000s, has annually expended substantial sums in advertising expenditures related to

its SCAR Trademark, and demonstrated successful sales of its SCAR-branded firearm

year over year since its launch in the early 2000's.

Accordingly, FN is entitled to partial summary judgment on the first element of its

federal, state, and common law trademark and unfair competition claims: that FN owns a

valid and protectable SCAR Mark.

## II.    There are no genuine issues of fact as to any of Ruger's Affirmative Defenses.

Ruger's Answer asserts a litany of Affirmative Defenses, including the equitable doctrines of "laches and estoppel," "waiver," and "unclean hands." Doc. 14, Ruger Answer and Affirmative Defenses at 12. Ruger also attempts to "reserve," without any allegations or evidence, all other affirmative defenses under Rule 8(c). *Id.* at 13.

Beyond scant allegations that FN delayed "nearly a year" in filing suit following its initial demand to cease use of the infringing SFAR mark and subsequent settlement communications, *id.* at 12, Ruger offers little in the way of allegations to support its Affirmative Defenses. Indeed, even with the benefit of full and complete discovery, Ruger will be unable to proffer evidence to sustain ***any*** of its Affirmative Defenses to liability. *See Ray Commc'ns., Inc.*, 673 F.3d at 307 ("[B]ecause the burden of proving laches rests with the proponent of that defense, the defendant had an obligation to adduce specific evidence of prejudice in order to thwart the plaintiffs' motion for summary judgment." (quoting *Vineberg v. Bissonnette*, 548 F.3d 50, 58 (1st Cir. 2008)). As such, Ruger's Affirmative Defenses to liability should be rejected and dismissed as a matter of law.

13

**A.** **Ruger's "laches" defense fails because FN did not "unreasonably or inexcusably" delay in asserting its rights in the SCAR Trademark, and Ruger was not prejudiced by any alleged delay.[5]**

The Fourth Circuit recently confirmed that whether any alleged delay by FN in asserting its rights in the SCAR Trademark bars its claim must be considered under the doctrine of laches rather than rigid application of an analogous state law statute of limitation. *See Belmora LLC v. Bayer Consumer Care AG*, 987 F.3d 284, 294 (4th Cir. 2021). But *Belmora* did not alter Fourth Circuit laches law generally, reiterating that "the statute of limitations from the most analogous state law will continue to play an important role in the district court's laches analysis." *Id.* Specifically, laches is "presumed to bar § 43(a) claims filed outside the analogous limitations period." *Id.* (citing *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 121 (4th Cir. 2011)).

More applicable here, the converse is also true: it is ***presumed*** that "if an equitable claim is brought within the limitations period, it will ***not*** be barred by laches." *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 799 (4th Cir. 2001) (collecting cases); *accord High Volatage Beverages, LLC*, No. 2011 WL 831523, at *3 (applying presumption); *Synergistic Int'l, L.L.C. v. Korman*, No. 2:05-cv-049, 2007 WL 517677, at

---

[5] Ruger's first Affirmative Defense asserts "the equitable doctrines of laches ***and estoppel***." FN understands this to be reliance simply on the doctrine of "estoppel by ***laches***" as generally recognized by the Fourth Circuit. *See, e.g.*, *What-A-Burger of Va., Inc. v. Whataburger, Inc. of Corpus Christi, Tx.*, 357 F.3d 441, 448 (4th Cir. 2004) (recognizing that "estoppel by laches generally applies in a trademark infringement action to preclude relief for an owner of a mark who has unreasonably slept on his rights"). To the extent Ruger contends that its reference to "estoppel" invokes the doctrine of "acquiescence" in addition to laches, the inapplicability of that defense is discussed hereinbelow at Sec. II.B.

\*8 (E.D. Va. 2007) ("[i]f the plaintiff filed suit within the analogous limitations period, the strong presumption is that laches is inapplicable."); *see also* 4 *McCarthy on Trademarks and Unfair Competition* ("McCarthy") § 31:23 (5th ed.) ("The courts have created this presumption: delay in filing suit longer than the analogous state statute of limitations will presume an unreasonable delay in support of a laches defense. ***Conversely, delay shorter than the state statute of limitations will not support a defense of laches***." (citing *Belmora LLC*, 987 F.3d at 294)).

In North Carolina, the analogous state law is the North Carolina Unfair and Deceptive Trade Practices Act (also asserted here), which provides for a four-year statute of limitations period. *See Lyons P'Ship, L.P.*, 243 F.3d at 799 (citing N.C. Gen. Stat. § 75-16.2); *High Volatage Beverages, LLC*, No. 2011 WL 831523, at \*3 ("It is likewise undisputed that the Plaintiff brought this suit within the four year limitations period, which creates a presumption that laches is inapplicable").

Thus, application of the presumption turns on whether FN initiated suit within four years of the infringement, ***which it did***—FN demanded Ruger cease use of the infringing SFAR Mark just one month after Ruger's launch, and filed suit within a year and a half. *See, e.g.*, Answer ¶ 36. Accordingly, Ruger's laches defense is presumed deficient, and fails as a matter of law, unless Ruger can overcome the presumption. *See Belmora LLC*, 987 F.3d at 295 ("whether a Lanham Act claim has been brought within the analogous state statute of limitations is not the ***sole*** indicator of whether laches may be applied in a particular case.").

15

Whether Ruger can overcome the presumption turns on its ability to muster evidence in support of the following factors: (1) whether FN knew of Ruger's adverse use of the SFAR mark, (2) whether any alleged delay by FN in challenging that use "was inexcusable or unreasonable," and (3) whether Ruger "has been unduly prejudiced" by any such delay. *Id.* (requiring that the factors be considered "independent of the presumption"). Ruger cannot meet its burden. *See GoSecure Inc.*, 637 F. Supp. 3d at 378 (rejecting laches defense at summary judgment where accused infringer failed to put forth any "evidence that Plaintiff brought its trademark infringement claim with unreasonable or prejudicial delay, or consented to Defendant's infringing uses"); *Ray Commc'ns., Inc.*, 673 F.3d at 307 ("proving laches rests with the proponent of that defense"); *High Volatage Beverages, LLC*, 2011 WL 831523, at *3 ("***defendant*** must present evidence that the plaintiff unreasonably delayed challenging the infringement and that such delay resulted in undue prejudice to the defendant").

## 1. FN did not delay in challenging Ruger's use in an "inexcusable or unreasonable manner."

There is no material dispute regarding the timing of FN's challenge to Ruger's infringing use, nor the subsequent communications between the Parties before FN ultimately filed suit. FN first learned of Ruger's infringing SFAR mark upon launch of Ruger's new SFAR-branded firearm in September 2022. Ex. 12 (Ruger announcement regarding infringing SFAR-branded firearm). FN immediately investigated and determined that Ruger's new mark would be problematic and likely to cause consumer confusion. Accordingly, FN promptly wrote to Ruger less than a month after Ruger

16

launched its infringing SFAR-branded product, on October 6, 2022, to demand that it cease using the infringing SFAR Mark. *See* Doc. 14, Ruger Answer at ¶ 36 (admitting receipt of FN's initial October 2022 demand letter).

Ruger later responded, indicating that it disagreed its use of the infringing SFAR Mark constituted trademark infringement and refusing to cease use of the mark or modify its use in any way. *Id.* Thereafter, the Parties and their respective attorneys exchanged additional letters and e-mail correspondence in the months that followed, including the possibility of settlement. *See* Ruger Answer at ¶ 36 (acknowledging communications between the Parties less than one year before filing the Complaint); *see also supra* note 2. Ultimately, those settlement efforts were unsuccessful, and less than a year later, and just 18-months after Ruger's launch of the infringing SFAR-branded firearm, FN initiated this suit. *See* Doc. 1.

Ruger must therefore establish that these undisputed facts—FN's initial demand to Ruger ***less than a month*** after Ruger's launch, a subsequent settlement negotiation period, followed by FN's filing suit ***less than a year*** after settlement discussions ceased—are sufficient to support a laches defense. They are not.

A prompt cease and desist letter, especially when followed by a period of settlement negotiations, has been found sufficient to end any "period of delay" for laches purposes. *See, e.g.*, *Perini Corp. v. Perini Const., Inc.*, 715 F. Supp. 719, 724 (D. Md. 1989) (analyzing the delay factor in terms of how long plaintiff waited to send the initial cease and desist letter (~2 years) rather than the time from discovery to ultimately filing

suit (~4 years)), *rev'd on other grounds*, 915 F.2d 121 (4th Cir. 1990); s*ee also*, *e.g.*, *Wilson v. Tessmer Law Firm, PLLC*, 483 F. Supp. 3d 416, 428 (W.D. Tex. 2020) (rejecting laches defense and finding that receipt of cease and desist letter four months after learning of infringement terminated any period of delay for laches purposes, despite not filing suit until more than four years later) (citing *Elvis Presley Enters. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998)). Calculating this time period from sending the cease and desist letter, rather than tacking on the notice and settlement period before ultimately filing suit makes sense, as "any acts after receiving a cease and desist letter are at the defendant's own risk because it is on notice of the plaintiff's objection to such acts." *Elvis Presley Enters.*, 141 F.3d at 205; *accord Perini Corp.*, 715 F. Supp. at 724. FN's objection to Ruger less than a month after the infringement began cannot be characterized as inexcusable or unreasonable delay.

Further, even assuming FN's cease and desist letter did not terminate the applicable delay period, any purported "delay" by FN for laches purposes could be, ***at most***, 18-months—the period from Ruger's first sales of the infringing SFAR-branded firearms in September 2022 to FN filing suit in March 2024. The law likewise rejects laches for this time period.

Appropriately, the law does not require rushing to the court. Instead, the law supports exploring settlement (which FN did for six months) and ultimately ensuring that plaintiff does not "shoot[] from the hip" and potentially face "a counterclaim for overly aggressive use of litigation" before filing suit. *Sara Lee Corp. v. Kayser-Roth Corp.*, 81

18

F.3d 455, 462 (4th Cir. 1996) (quoting 4 *McCarthy* § 31:06)); *accord Perini Corp.*, 715 F. Supp. at 724 (collecting cases and holding that two-year delay before even starting settlement talks, let alone filing suit, was not unreasonable and rejecting laches defense); *U.S. Olympic Comm. v. Olympic Supply, Inc.*, 655 F. Supp. 2d 599, 605 (D. Md. 2009) (rejecting laches defense as a matter of law where plaintiff promptly objected to infringing use and following settlement attempts ultimately initiated suit 18-months after learning of the infringement).

FN acted appropriately here. FN first attempted settlement, and when Ruger demonstrated its rejection of those efforts, including by expanding its infringing product line to other calibers, FN promptly initiated suit. *See* Exs. 13 & 14 (new product introductions in December 2023 and February 2024, respectively, establishing that Ruger was disregarding FN's demand—FN filed suit immediately thereafter). Ruger therefore cannot establish an essential element of its laches defense—that FN somehow delayed in challenging Ruger's infringing use of the SFAR mark in an "inexcusable or unreasonable way." Ruger's laches defense fails as a matter of law.

### 2. Ruger was not unduly prejudiced by any delay.

Ruger also cannot establish that FN's purported "delay" resulted in "undue prejudice" to Ruger. *Belmora LLC*, 987 F.3d at 295. Prejudice is a stand alone element that must be established to support a laches defense. *See, e.g.*, *Ray Commc'ns, Inc.*, 673 F.3d at 305 ("mere delay that does not result in actual injury to defendant is insufficient."); *see also* 4 *McCarthy* § 31:12 ("The cases are legion to the effect that mere

19

delay, without resulting injury to defendant, is not sufficient to prevent relief for infringement").

Courts have analyzed prejudice both from an "economic" and "evidentiary" perspective. *See Ray Commc'ns, Inc.*, 673 F.3d at 305. For example, a defendant may suffer "evidentiary prejudice" where a delay leads to "the absence of pertinent documentation" or "lack of testimonial or documentary evidence" necessary for its defense. *Id.* (rejecting argument that absence of certain documents actually prejudiced the defendant). Such prejudice must relate to "lost, stale or degraded evidence or witnesses whose memories have faded or who have died." *Id.* Ruger has not claimed, nor can it, that evidence supporting any defense is missing because of any delay by FN.

"Economic prejudice" relates to development of a valuable business around the infringing mark during the period of alleged inaction by the trademark owner. *Id.* But once again, Ruger cannot show evidence of such prejudice, which is an essential element. *See id.*; *see also* 4 *McCarthy* § 31:12. Indeed, the Fourth Circuit and other Courts have recognized that "if prejudice could consist merely of expenditures in promoting the infringed name, then relief would have to be denied in practically every case of delay." *Ray Commc'ns, Inc.*, 673 F.3d at 305 (quoting *Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 615 (7th Cir. 1965)); *see also* 4 *McCarthy* § 31:12.

Here, at most, Ruger can point to its continued sale of infringing SFAR-branded firearms despite FN's prompt demand—***after only one month***—that it cease doing so. That is insufficient as a matter of law. *See id.* Ruger therefore cannot meet its burden to

20

prove undue prejudice. That failure, as well as Ruger's inability to demonstrate that any delay by FN was "inexcusable or unreasonable," defeats Ruger's laches defense as a matter of law.

### B.  Ruger cannot establish Estoppel by Acquiescence.

Acquiescence is a counterpart to laches, but rather than a trademark owner "sleeping" on its rights, acquiescence requires a trademark owner's "active consent" to the infringement. *What-A-Burger of Va., Inc.*, 357 F.3d at 452. Accordingly, Ruger must establish that FN conveyed some express or implied consent to Ruger's use of the infringing SFAR Mark "through affirmative word or deed." *Id.*; *accord Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 438-39 (4th Cir. 2011) ("[a]n infringement action may be barred by the doctrine of estoppel by acquiescence where the owner of the trademark, by conveying to the defendant through affirmative word or deed, expressly or impliedly consents to the infringement." (quoting *Sara Lee Corp.*, 81 F.3d at 462)); *GoSecure Inc.*, 637 F. Supp. 3d at 378-79 (rejecting acquiescence defense as a matter of law where defendant provided no evidence that any conduct of plaintiff "amounted to an assurance to the defendant, express or implied, that the plaintiff would not assert his trademark rights against the defendant." (quoting *Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039, 1046 (4th Cir. 1984)).

Ruger can point to no "affirmative word or deed" by FN consenting to its ongoing infringement. Quite the opposite, FN promptly sent a cease and desist letter demanding

21

Ruger stop use of the infringing SFAR Mark. Ruger therefore cannot rely on any estoppel by acquiescence defense and should be precluded from doing so as a matter of law.[6] *Id.*

## C. There are no facts to support Ruger's pleaded "unclean hands" Affirmative Defense.

To establish "unclean hands," Ruger would have to prove (1) some conduct of FN was "inequitable," (2) that the conduct at issue "directly related to FN's claims at issue in this litigation, and (3) such conduct somehow injured Ruger. *See JTH Tax, Inc. v. H & R Block Eastern Tax Servs., Inc.*, 128 F. Supp. 2d 926, 949 (E.D. Va. 2001). Critically, any "unclean hands" must relate to FN's asserted SCAR Trademark and its claims for trademark infringement. *See Peterman v. Ramod Brewers, LLC*, No. 4:21-CV-156, 2023 WL 11812284, at *7 (E.D.N.C. Mar. 8, 2023) (dismissing "unclean hands" defense where defendant's articulated misconduct by plaintiff was unrelated to infringement at issue); *McCarthy* § 31:48 ("Misconduct in the abstract, unrelated to the claim to which it is asserted as a defense, does not constitute unclean hands.").

Here, Ruger has at no time articulated any conduct by FN related to its trademark infringement claim that would constitute "unclean hands" or any kind of trademark misuse. Nor can Ruger adduce any such evidence following discovery. Accordingly, dismissal of Ruger's "unclean hands" Affirmative Defense is appropriate. *See Peterman*, 2023 WL 11812284, at *7 (dismissing unclean hands defense).

---

[6] Ruger's second Affirmative Defense of "waiver" is effectively just another name for acquiescence, and fails for the same reasons. *See, e.g.*, *adidas Am., Inc. v. Payless Shoesource, Inc.*, 529 F. Supp. 2d 1215, 1256 (D. Or. 2007) (requiring "clear, decisive and unequivocal" intent by trademark owner to relinquish its trademark rights).

## CONCLUSION

For the reasons set forth above, Plaintiff FN respectfully requests partial summary judgment that its owns a valid and protectable right in its SCAR Trademark, and dismissing each of Ruger's Affirmative Defenses to liability, including at least its Affirmative Defenses of laches, acquiescence, waiver, and unclean hands.

Dated: April 11, 2025

Respectfully Submitted,

WILLIAMS MULLEN

By: */s/ Robert C. Van Arnam*
Robert C. Van Arnam (N.C. Bar No. 28838)
Andrew R. Shores (N.C. Bar No. 46600)
**WILLIAMS MULLEN**
301 Fayetteville Street, Suite 1700
Raleigh, NC 27601
Telephone: (919) 981-4000
Facsimile: (919) 981-4300
rvanarnam@williamsmullen.com
ashores@williamsmullen.com

*Attorneys for Plaintiffs*

23

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies that this brief contains fewer than 6,250 words, as

calculated use the word count feature in Microsoft Word, and therefore complies with

Local Rule 7.3(d)(1).

*/s/ Robert C. Van Arnam*
Robert C. Van Arnam (N.C. Bar No. 28838)
**WILLIAMS MULLEN**
301 Fayetteville Street, Suite 1700
Raleigh, NC  27601
Telephone: (919) 981-4000
Facsimile: (919) 981-4300
rvanarnam@williamsmullen.com

*Counsel for Plaintiffs*

24

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2025 I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will send notification of electronic filing

to all counsel of record for Plaintiff:

*/s/ Andrew R. Shores*
Andrew R. Shores (N.C. Bar No. 46600)
**WILLIAMS MULLEN**
301 Fayetteville Street, Suite 1700
Raleigh, NC 27601
Telephone: (919) 981-4000
Facsimile: (919) 981-4300
ashores@williamsmullen.com

*Counsel for Plaintiffs*