# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| FN HERSTAL, S.A., and | ) | |
| FN AMERICA, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No.: 1:24-cv-218-LCB-JEP |
| | ) | |
| STURM, RUGER & CO., INC., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO EXCLUDE CERTAIN TESTIMONY AND OPINIONS OF <u>RUGER EXPERT W. TODD SCHOETTELKOTTE</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

TABLE OF EXHIBITS ............................................................................................... vi

I. Introduction ............................................................................................................ 1

II. Question Presented ............................................................................................... 1

III. Statement of Relevant Facts ............................................................................... 1

IV. Legal Standard .................................................................................................... 3

V. Argument ............................................................................................................. 6

   A.   The Court Should Exclude Mr. Schoettelkotte From Offering Any Testimony as to Trademark Confusion ........................................................................................ 6

   B.   Mr. Schoettelkotte's Apportionment Opinion is Unreliable and Must Be Excluded. ……………………………………………………………………………………..7

   C.   Mr. Schoettelkotte's Proposed Testimony is Not Reliable or Helpful to a Jury .... 15

VI. CONCLUSION .................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Eagle Outfitters, Inc. v. Walmart*
No. 2:20-cv-412, 2023 WL 1775702 (W.D. Pa. Feb. 6, 2023) ..................................... 17

*Am. Sci. & Eng'g, Inc. v. Autoclear, LLC*,
No. 2:07-cv-415, 2009 WL 5842051 (E.D. Va. Jan. 6, 2009) ........................................ 6

*Cooper v. Smith & Nephew, Inc.*,
259 F.3d 194 (4th Cir. 2001) ...................................................................................... 4

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ................................................................................... 3, 4, 5, 16

*Eastern Auto Distribs., Inc. v. Peugeot Motors of Am.*,
795 F.2d 329 (4th Cir. 1986) ...................................................................................... 4

*Fail–Safe, L.L.C. v. A.O. Smith Corp.*,
744 F. Supp. 2d 870 (E.D. Wis. 2010) ........................................................................ 8

*In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*,
524 F. Supp. 2d 1166 (N.D. Cal. 2007) ........................................................................ 8

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*,
174 F. Supp. 3d 911 (D.S.C. 2016) ......................................................................... 8, 14

*Kadel v. Folwell*,
620 F. Supp. 3d 339 (M.D.N.C. 2022) ....................................................................... 10

*Kopf v. Skyrm*,
993 F.2d 374 (4th Cir. 1993) ...................................................................................... 7

*Nease v. Ford Motor Co.*,
848 F.3d 219 (4th Cir. 2017) ................................................................................... 3, 4

*NNCrystal US Corp. v. Nanosys, Inc.*
No. 19-1307, 2023 WL 2891453 (D. Del. Apr. 11, 2023) ........................................... 17

*Oglesby v. Gen. Motors Corp.*,
190 F.3d 244 (4th Cir. 1999) ................................................................................... 3, 4

iii

*Palacino v. Beech Mountain Resort, Inc.*,
    No. 1:13-cv-334, 2015 WL 8675991 (W.D.N.C. Dec. 11, 2015) ................................ 16

*Perry v. Scruggs*,
    17 F. App'x. 81 (4th Cir. 2001) .................................................................................... 11

*Phoenix Renovation Corp. v. Rodriguez*,
    439 F. Supp. 2d 510, 519 (E.D. Va. 2006)……………………………………………..3

*Pitt Ohio Exp., LLC v. Pat Salmon & Sons, Inc.*,
    532 F. App'x 439 (4th Cir. 2013) .................................................................................. 15

*Rembrandt Social Media, LP v. Facebook, Inc.*,
    22 F. Supp. 3d 585 (E.D. Va. 2013) .............................................................................. 10

*Sardis v. Overhead Door Corp.*,
    10 F.4th 268 (4th Cir. 2021) ........................................................................................... 4

*SMD Software, Inc. v. EMove, Inc.*,
    945 F. Supp. 2d 628 (E.D.N.C. 2013) ....................................................................... 7, 10

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
    No. 3:16-cv-545, 2018 WL 2214035 (E.D. Va. May 11, 2018)....................................... 5

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
    550 F.3d 1356 (Fed. Cir. 2008) ...................................................................................... 6

*Syngenta Crop Prot., LLC v. Willowood Azoxystrobin, LLC*,
    267 F. Supp. 3d 649 (M.D.N.C. 2017) ............................................................................ 5

*TecSec, Inc. v. Adobe Sys. Inc.*,
    No. 1:10-cv-115, 2018 WL 3656370 (E.D. Va. June 8, 2018)...................................... 10

*TruAuto MC, LLC v. Textron Specialized Vehicles, Inc.*,
    No. 2:19-cv-1381-RMG, 2021 WL 4167454 (D.S.C. Sept. 14, 2021)........................... 15

*Tyger Constr. Co. v. Pensacola Constr. Co.*,
    29 F.3d 137 (4th Cir. 1994) ....................................................................................... 4, 5

*United States v. Dorsey*,
    45 F.3d 809 (4th Cir. 1995) ............................................................................................ 5

*United States v. Lester*,
    254 F. Supp. 2d 602 (E.D. Va. 2003) .............................................................................. 5

iv

*United States v. McIver*,
   470 F.3d 550 (4th Cir. 2006) ........................................................................ 5

*Westberry v. Gislaved Gummi AB*,
   178 F.3d 257 (4th Cir. 1999) ..................................................................... 16

*Zellars v. NexTech Ne., LLC*,
   895 F. Supp. 2d 734 (E.D. Va. 2012) ........................................................ 6

**Rule**

Federal Rule of Evidence 702 ................................................................. 1, 3, 5

Case 1:24-cv-00218-LCB-JEP    Document 54    Filed 04/11/25    Page 5 of 26

## TABLE OF EXHIBITS

| EXHIBIT | DESCRIPTION |
| --- | --- |
| Exhibit A | March 2, 2006 FN Press Release |
| Exhibit B | Rebuttal Expert Report of W. Todd Schoettelkotte Relating to Plaintiffs' Alleged Damages (Filed Under Seal) |
| Exhibit C | FN SCAR Buyer Study (January 2022) (Excerpt Filed Under Seal) |
| Exhibit D | NSSF Report, "Modern Sporting Rifle Comprehensive Consumer Report" (Excerpt) |
| Exhibit E | February 27, 2025 Deposition Transcript of William Todd Schoettelkotte (Excerpt Filed Under Seal) |
| Exhibit F | Memorandum Order, *Finalrod IP, LLC v. Endurance Lift Solutions, Inc.*, Case No. 2:20-cv-00189 (E.D. Tex. Oct. 22, 2021) |
| Exhibit G | March 26, 2025 Deposition Transcript of Dana Trexler (Excerpt) |
| Exhibit H | Robert Werkmeister Deposition Transcript (Excerpt Filed Under Seal) |
| Exhibit I | Mark Gurney Deposition Transcript (Excerpt Filed Under Seal) |

## I.    Introduction

Plaintiffs FN Herstal, S.A. and FN America, LLC (collectively, "FN") move to exclude certain proffered opinions of Defendant Sturm, Ruger, & Co. Inc.'s ("Ruger") rebuttal damages expert, W. Todd Schoettelkotte, because those opinions fail to meet the requirements of Federal Rule of Evidence 702 and *Daubert*. Mr. Schoettelkotte should be precluded from offering opinions on what constitutes evidence relevant to trademark confusion and/or the likelihood of confusion analysis because he is a damages expert and unqualified to render such opinions. Mr. Schoettelkotte should also be precluded from offering his apportionment opinions because he did not consider the record evidence and his calculations are unreliable and based on cherry-picked data.

## II.    Question Presented

Under the Federal Rule of Evidence 702/*Daubert* standard, should the Court exclude Mr. Schoettelkotte's proffered testimony on trademark confusion because he lacks the requisite knowledge and experience, and his apportionment calculations because his methodology was unreliable and speculative? **A: Yes**

## III.    Statement of Relevant Facts

FN asserts federal, state, and common law trademark infringement and unfair competition claims against Ruger, alleging that their rights in their incontestable "SCAR" mark for use in relation to modern sporting rifles (the "SCAR Mark") are being infringed by Ruger's use of "SFAR" for identical goods. *See generally* Doc. 1 ("Complaint"); *see also* 1-3, 1-4 (U.S. Trademark Registration Nos. 4,100,728 and 5,314,134 for the word

1

mark "SCAR"). FN's has continuously used the SCAR Marks since at least the mid-2000s. *See* Ex. A at 1 (Mar. 2, 2006 FN Press Release discussing timeline of SCAR development and commercial release). Since September 2022, Ruger has been using its mark "SFAR" with a line of similar sporting rifles. *See* Ex. B ¶ 18 ("Report"). Ruger's use of the "SFAR" mark was designed to and is likely to cause consumer confusion in the marketplace. Specifically, consumer confusion is likely to occur due to Ruger's marketing and selling of rifles bearing the SFAR mark to the same consumers as FN via the same channels of trade as the SCAR rifles, as well as the SFAR and SCAR rifles both falling under the modern sporting rifle category. *See* Report ¶¶ 18, 23.

On December 23, 2024, FN served the report from its damages expert, Dana Trexler, who performed calculations and offered an opinion as to the amounts of Ruger's profits subject to disgorgement, as well as calculations to determine a reasonable royalty for the years 2022 to 2024.

On January 17, 2025, Ruger served the rebuttal report from its damages expert, Mr. Schoettelkotte. Report ¶ 10. Mr. Schoettelkotte was primarily offered to provide expert testimony relating to the amount of Ruger's profits attributable to the use of the SFAR mark and the appropriate royalty or license of the SCAR mark as protected by the SCAR Registrations. *Id.* ¶ 11. But he also reserved the right to testify as to trademark confusion. *See, e.g.,* Report at ¶¶ 22-23; Ex. E at 116:4-18 ("Schoettelkotte Dep. Tr.") █████████

█████████████████████████████████████████████████

███

2

In a trademark case, a defendant bears the burden of apportioning out profits not attributable to the infringement. *Phoenix Renovation Corp. v. Rodriguez*, 439 F. Supp. 2d 510, 519 (E.D. Va. 2006). To calculate his apportionment percentages, Mr. Schoettelkotte relied on only two slides from two studies provided to him: a PowerPoint prepared by FN in January 2022 titled "SCAR Buyer Study" ("SCAR Study"), attached hereto at Exhibit C, and an incomplete copy of the 2022 National Shooting Sports Foundation report titled "Modern Sporting Rifle Comprehensive Consumer Report" on the "Ownership, Usage and Attitudes Toward AR- and AK-Platform Modern Sporting Rifles" ("NSSF Report"), attached hereto as Exhibit D. These studies were neither designed to determine the value of brand to the purchasing decision, nor compared one criterion from another. *See* NSSF Report at 10 (noting "the aim is to provide the NSSF and manufacturers insights on current consumer needs and uses of MSRs as well as educate those influencing public policy…."); SCAR Study at FN_R00001510 (setting forth key objectives for study). Nevertheless, Mr. Schoettelkotte compared the factors himself and conducted simple math to find his low and arbitrary apportionment percentages.

## IV.    Legal Standard

Rule 702 establishes "a district court's gatekeeping responsibility to 'ensure that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand.'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). "A reliable expert opinion must be based on scientific, technical, or other specialized *knowledge* and not on belief or speculation."

3

*Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999). Courts look to several factors as indicia of reliability, including "testing, peer review, evaluation of rates of error, and general acceptability" in the expert's field. *Id.* For an expert to satisfy a court's reliability inquiry, that court must find that "the reasoning or methodology underlying the [proffered] testimony is scientifically valid and . . . that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–593. Without the proper application of *Daubert* gatekeeping, jurors may be presented with "dubious scientific testimony" that can inappropriately "sway[]" their verdict. *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 275 (4th Cir. 2021) (citing *Nease*, 848 F.3d at 231) (internal quotations omitted)). The proponent of expert testimony bears the burden of proof on admissibility by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n.10; *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).

*Daubert* scrutiny is particularly important "in a situation . . . when an expert has apparently taken factual data from the specific project in dispute, and formulated estimates of damages." *Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 145 (4th Cir. 1994); *see also Eastern Auto Distribs., Inc. v. Peugeot Motors of Am.*, 795 F.2d 329, 338 (4th Cir. 1986) ("[s]crutiny of expert testimony is especially proper" in damages cases, where expert testimony "consists of "an array of figures conveying a delusive impression of exactness in an area where a jury's common sense is less available than usual to protect it."). If an expert's damages calculations "lack a reasonable basis in fact or are based on . . . projections with no coherent explanation of their methodology, then the court should

4

exclude the expert's testimony." *Syngenta Crop Prot., LLC v. Willowood Azoxystrobin, LLC*, 267 F. Supp. 3d 649, 657 (M.D.N.C. 2017) (internal citations omitted).

Rule 403 also permits the exclusion of evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Daubert*, 509 U.S. at 595; *United States v. Dorsey*, 45 F.3d 809, 813 (4th Cir. 1995). Expert testimony has the potential to mislead the jury under Rule 403, since the jury may attach more significance to the testimony than is reasonably warranted. *See United States v. Lester*, 254 F. Supp. 2d 602, 607 (E.D. Va. 2003) (citing *Daubert*, 509 U.S. at 595)).

Further, as the Fourth Circuit has explained, "expert opinion that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006). Thus, "[a]n expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record." *Steves & Sons, Inc. v. JELD-WEN, Inc.*, No. 3:16-cv-545, 2018 WL 2214035, at *2 (E.D. Va. May 11, 2018) (quoting *Tyger Const. Co. Inc.*, 29 F.3d at 142).

## V.     Argument

### A. The Court Should Exclude Mr. Schoettelkotte From Offering Any Testimony as to Trademark Confusion

Any testimony by Mr. Schoettelkotte on the issue of trademark confusion and/or the likelihood of confusion factors should be excluded under Rule 702. An expert's testimony is only relevant if it is within the expert's knowledge and expertise and is connected to the

5

facts of a case. *See, e.g.*, *Zellars v. NexTech Ne., LLC*, 895 F. Supp. 2d 734, 743-44 (E.D. Va. 2012) (excluding testimony when expert "lacks sufficient scientific or specialized knowledge to assist the fact-finder on the issue"). In other words, an expert must "stay in his/her lane" to be admitted. *See Am. Sci. & Eng'g, Inc. v. Autoclear, LLC*, No. 2:07-cv-415, 2009 WL 5842051, at *2 (E.D. Va. Jan. 6, 2009) ("While Dr. Matheson has a Ph.D in physics, he has no relevant experience directly related to x-ray imaging systems."); *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1364-65 (Fed. Cir. 2008) (where the expert testifies outside his expertise, the testimony only serves to confuse the jury and amounts to "nothing more than advocacy from the witness stand").



Mr. Schoettelkotte admits that his ███████████████████████████ ███████████████████████████████████████████████████████████ ████ Schoettelkotte Dep. Tr. 62:23-63:5; 78:21-23; *see also id.* at 73:20-22; 73:25-74:5; 78:8-9; 117:18-19. ██████████████████████████████████████ ██████████████████████████ *Id.* at 116:4-18 ███████████████████ █████████████████████████████████████████████████████[1] Mr. Schoettelkotte is a CPA and his experience is limited to financial and economic damages. Report ¶¶ 3-4. He does not have experience with marketing, branding or any qualifications to allow him to testify as to trademark confusion or the likelihood of confusion factors.

---

[1] FN is not offering its damages expert, Ms. Trexler, on the subject of trademark confusion as she assumed liability to render her opinion. Ex. F, Trexler Dep. Tr. 98:19-21; 139:19-21 (testifying that she "[has] no legal opinions" regarding trademark law and that she "assume[d] liability").

Accordingly, Mr. Schoettelkotte must be precluded from offering any such testimony or opinion. *SMD Software, Inc. v. EMove, Inc.*, 945 F. Supp. 2d 628, 635 (E.D.N.C. 2013); *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993).

### B. Mr. Schoettelkotte's Apportionment Opinion is Unreliable and Must Be Excluded.

Mr. Schoettelkotte relies exclusively on two slides, one each from the NSSF Report and SCAR Study—studies he did not conduct, that he knows nothing about and that were provided to him by counsel—to arrive at the apportioned profit number in his Report. Mr. Schoettelkotte's exclusive use of these two slides, disregard for other evidence, and lack of a reliable methodology, renders his conclusions inadmissible.

#### 1. Mr. Schoettelkotte turned a blind eye to other record evidence.

Mr. Schoettelkotte relied exclusively on one slide from each of the NSSF Report and SCAR Survey to conduct his apportionment analysis, ignoring other data in those studies and the record as to the significance of brand to buyers. For example, in other parts of his own Report and the record, there is evidence that brand is important to the buying decision. Ex. G, Werkmeister Dep. Tr. 120:1-121:23 ███████████████████

███████████████████████████████████████████████████████

███████████████████████████████████ Ex. H, Gurney Dep.

Tr. 55:8-58:23 ████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████ Report ¶¶ 31, 43 ████████████████████ While in his Report Mr.

7

Schoettelkotte claims to have considered these other factors, Report ¶¶ 74-75, in reality he "cherry-picks" information handpicked for him by counsel in the NSSF Report and SCAR Survey to render his opinion. Schoettelkotte Dep. Tr. 26:4-9.

███████████████████████████████████████████████████████████

████████████████████████████████████████████████ *Id.* at 181:9-

17 █████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████ By ignoring record evidence and focusing on only two slides, Mr. Schoettelkotte's opinion fails to comply with *Daubert's* standard for relevance and reliability. *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 174 F. Supp. 3d 911, 931–32 (D.S.C. 2016) ("cherry-picking of data is unreliable and 'fails to satisfy the scientific method and *Daubert*.'"); *Fail–Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 889 (E.D. Wis. 2010) ("[I]t is readily apparent that Dr. Keegan all but 'cherry picked' the data he wanted to use, providing the court with another strong reason to conclude that the witness utilized an unreliable methodology."); *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D. Cal. 2007) (excluding expert testimony where expert "reaches his opinion by first identifying his conclusion . . . and then cherry-picking observational studies that

Case 1:24-cv-00218-LCB-JEP    Document 54    Filed 04/11/25    Page 14 of 26

support his conclusion and rejecting or ignoring the great weight of the evidence that contradicts his conclusion"). For this reason alone, his conclusions should be excluded.

**2. Mr. Schoettelkotte's calculation from the NSSF Study is inconsistent with the study results and was not based on any reliable methodology.**

The NSSF Report includes data resulting from an "online survey" that was conducted in December 2021, **before** the September 2022 launch of the SCAR product. Accordingly, the study specifically did not ask about the value of FN, Ruger or their SCAR and SFAR rifles or brands. *See* NSSF Report. Regardless, Mr. Schoettelkotte cites one slide titled, "Most Recently Acquired MSR: Reasons for Buying," a summary of data from a subset of the respondents ("Reasons for Buying Slide"), as specifically relevant to his apportionment calculations. NSSF Report at 26; Report ¶ 76.

The Reasons for Buying Slide sets forth a rating scale from 1, for not important, to 10, for very important, as the "Most Important Reasons for Buying Most Recently Purchased MSR." NSSF Report at 26. Respondents rated 21 different reasons separately out of 10 and the NSSF compiled the data into a graph to show how respondents rated each reason. *Id.* Importantly, this Slide did not ask about the value of brand. Mr. Schoettelkotte's conclusions are unreliable for many reasons.



Report ¶ 76; Schoettelkotte Dep. Tr. 165:16-19; 165:23-166:3.

*Id.* As he did not conduct the study, and cannot independently

confirm what was meant by that term, Mr. Schoettelkotte is impermissibly speculating that this study question asked about the value of brand and that no other factor was related to brand. For instance, Mr. Schoettelkotte ignored other factors such as reliability that could also signify the value of the brand. *See, e.g.*, Schoettelkotte Dep. Tr. 170:17-19; 170:21-171:13; NSSF Report at 26 (noting Reliable as a 9/10 and Accuracy as 8.8/10).

While Ruger may argue that Mr. Schoettelkotte's "[g]eneral knowledge, skill, experience, training, or education" are sufficient to permit him to make such a leap, in this Court these bases are "insufficient to qualify" Mr. Schoettelkotte to make such a conclusion. *Kadel v. Folwell,* 620 F. Supp. 3d 339, 360 (M.D.N.C. 2022) (Biggs, J.). Mr. Schoettelkotte's "subjective beliefs, [] speculation, and [] hunches" regarding the hearsay and terms in the NSSF Report "are not admissible" as they are merely *ipse dixit. Rembrandt Social Media, LP v. Facebook, Inc.*, 22 F. Supp. 3d 585, 593 (E.D. Va. 2013); *see also TecSec, Inc. v. Adobe Sys. Inc.*, No. 1:10-cv-115, 2018 WL 3656370, at *2 (E.D. Va. June 8, 2018). Exclusion is appropriate. For example, in *SMD Software, Inc.*, the court excluded an expert's conclusion that "customers who read [an advertisement] exclusively relied on it in making a purchasing decision, as the conclusion required a "large unsupported leap" and the expert's conclusion was "based upon speculative assumptions not supported by the record." *SMD Software, Inc.*, 945 F. Supp. 2d at 637; *see also Perry v. Scruggs,* 17 F. App'x. 81, 87 (4th Cir. 2001) (expert's calculation of damages was inadmissible where his calculations relied on speculative assumptions).

10

Assuming the question solicited input on brand, Mr. Schoettelkotte then ignored the result that 94% of survey respondents rated "Reputation of Manufacturer" as an 8.1 out of 10 (or potentially 81%). The 8.1 rating was tied for 5th out of 21 factors, demonstrating that respondents believed this factor was very important. Most significantly, the survey respondents were not asked to rank each factor against the other factors. NSSF Report at 26 (stating "[f]or the 94% of respondents that purchased their MSR new or used, . . . to rate how important **each** of the following reasons are for selecting their most recently acquired MSR") (emphasis added).

Despite the 8.1/81% rating and his admission that the factors were not compared against each other in the NSSF study, Mr. Schoettelkotte compared them himself to decrease the value of Reputation of Manufacturer from 8.1 (or 81%) to ███ Schoettelkotte Dep. Tr. 175:9-21. When repeatedly asked to explain his underlying methodology he used to determine this ███ apportionment percentage, Mr. Schoettelkotte refused to explain and instead gave a word salad that did not answer the question. Schoettelkotte Dep. Tr. 174:10-175:12; 174:14-18, 176:25-177:20 ██████████████

██████████████████████████████

██████████████████████████████

████████ Mr. Schoettelkotte's words do not change or fix what he really did, which was simply and arbitrarily add each of the independent ratings for each factor together and divide that number by the rating for "Reputation of Manufacturer." *See* Report ¶ 76 ██████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

Mr. Schoettelkotte could not explain why he compared the "Reputation of Manufacturer" factor against the other factors when that is not what respondents were asked to do and not what those that conducted the study did; nor does he explain how his simple math was an actual and reliable methodology. Mr. Schoettelkotte's ████ apportionment percentage is based on: adopting a factor that he assumes, but has no way to know, equates to brand value; ignoring other factors that could relate and should be considered to constitute brand; comparing factors against each other when that is inconsistent with the study and results; and rendering a calculation that is simple math and not any reliable methodology. For all these reasons, his opinion is unreliable and must be excluded.

### 3. Mr. Schoettelkotte's calculation from the SCAR Study is also inconsistent with the study results and was not based on any reliable methodology.

For the same reasons, Mr. Schoettelkotte's opinion based on the SCAR Study is unreliable and inadmissible. ████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████ SCAR Study at FN_R00001510. Just as with the NSSF Study, Mr. Schoettelkotte ignored the slides specific to brand and instead relied on a slide with results about what information respondents searched. ██████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

12



SCAR Study at FN_R00001535-36;
Schoettelkotte Dep. Tr. 69:24-70:7 ████████████████████████████ 94:21-
23 ████████ While Mr. Schoettelkotte said he considered the entirety of the SCAR Study,

the reality is he did not, focusing instead only on the one slide to render his calculation.

Schoettelkotte Dep. Tr. 189:13-15; 189:21.[2] By failing to consider the relevant questions

as to brand, Mr. Schoettelkotte again shows that he is "cherry-picking" data which renders

his report unreliable. *In re Lipitor*, 174 F. Supp. 3d at 931.

---

[2] Remarkably, Mr. Schoettelkotte adopts respondents' awareness of brand in the NSSF
Report when he looks to "Reputation of Manufacturer, but entirely discounts it in the
SCAR Study. Schoettelkotte Dep. Tr. 188:9-13 ████████████████████████████████
████████████████████████████████



████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████ SCAR Study at FN_R00001532.███████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████ Schoettelkotte Dep. Tr. 200:18-21; 200:24-201:13████████

███████████████████; Report ¶ 77.

Like the NSSF Report, Mr. Schoettelkotte disregarded whether other factors could relate to brand *and that the question on the Slide he selected did not ask about brand value but what information was searched*. █████████████████████████

████████████████████████████████████████████

█████ Schoettelkotte Dep. Tr. 199:25-200:5; Report ¶ 77 and Schedule 4.4. When asked about these calculations at deposition, Mr. Schoettelkotte could not explain his

14

methodology, nor whether it was widely used and recognized. *See, e.g.*, Schoettelkotte Dep. Tr. 194:24-195:3; 195:11-197:23; 197:24-200:5. Instead, while giving it an impressive sounding name ███████████ it was nothing more than arbitrary and simple math applied to a question that did not ask about brand value.

For the same reasons as in the NSSF Report, this is no reliable methodology or any methodology at all. In fact, it is arbitrary math applied to inapplicable data. As such, his opinion would be harmful and prejudicial to the jury and should be excluded. *Pitt Ohio Exp., LLC v. Pat Salmon & Sons, Inc.*, 532 F. App'x 439, 442 (4th Cir. 2013) ("Expert testimony has its place, but courts are permitted to exclude expert testimony when it concerns matters within the everyday knowledge and experience of a lay juror."); *TruAuto MC, LLC v. Textron Specialized Vehicles, Inc.*, No. 2:19-cv-1381-RMG, 2021 WL 4167454, at *2 (D.S.C. Sept. 14, 2021) (excluding an expert's "testimony and expert report" as "unhelpful and unreliable" because his testimony "was based on simple mathematical calculations which did not require specialized knowledge" and could "easily be understood by a lay jury").

### C. Mr. Schoettelkotte's Proposed Testimony is Not Reliable or Helpful to a Jury

Compounding his error, Mr. Schoettelkotte then determines there is enough compatibility between the NSSF Report and SCAR Study to determine the "value" of brand, even though the data collected for both studies are not comparable and he did not rely on the questions pertaining to brand. *See* NSSF Report at 10 (noting "the aim is to provide the NSSF and manufacturers insights on current consumer needs and uses of MSRs

15

as well as educate those influencing public policy….”); SCAR Study at FN_R00001510 (setting forth key objectives for study).

Without question, the proposed expert testimony must be reliable and “necessitates an examination of whether the reasoning or methodology underlying the expert's proffered opinion . . . is supported by adequate validation to render it trustworthy.” *Palacino v. Beech Mountain Resort, Inc.*, No. 1:13-cv-334, 2015 WL 8675991, at *1–2 (W.D.N.C. Dec. 11, 2015) (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999)). To determine whether the expert's testimony is sufficiently reliable, *Daubert* suggests that courts consider several non-dispositive factors: (1) whether the expert's methodology can be tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the theory or technique has gained general acceptance within the relevant scientific community. *Daubert*, 509 U.S. at 593–94. Mr. Schoettelkotte failed to identify the error rate for the calculations or to identify whether the method was accepted by other experts in his field. And without any explanation or justification as to how it is proper, he performed the same calculation for two different data sets that were collected by two different organizations on two different scales.

This would not be the first time Mr. Schoettelkotte's opinion has been excluded. Other courts have found, as the Court should here, that he cherry-picked data, made *ipse dixit* conclusions, and did not use a reliable methodology. For example, in *NNCrystal US Corp. v. Nanosys, Inc.*, the District of Delaware excluded Mr. Schoettelkotte's testimony

16

where he "assert[ed] that the comparable licenses he analyzed had 'built-in apportionment,' but he [did] not explain how he arrived at that conclusion or cite to provisions of the licenses for support." No. 19-1307, 2023 WL 2891453, at *3 (D. Del. Apr. 11, 2023). The *NNCrystal* court also noted that, even if the evidence Mr. Schoettelkotte stated was present, he failed to "explain[] how the licenses he analyzed [were] 'sufficiently comparable' such that further apportionment would not be necessary." *Id.*; Schoettelkotte Dep. Tr. 35:18-22; 36:1.

In *American Eagle Outfitters, Inc. v. Walmart, Inc.*, the Western District of Pennsylvania found that Mr. Schoettelkotte "[did] not perform his purported purpose as an expert, to 'calculate damages'" and instead he provided opinions that were "couched in subjective and speculative language." No. 2:20-cv-00412, 2023 WL 1775702, at *3 (W.D. Pa. Feb. 6, 2023). The court excluded his testimony regarding lost sales and actual damages because they were not "supported by a reliable methodology and sufficient facts and data." *Id. See also* Ex. I at 5, *Finalrod IP, LLC v. Endurance Lift Solutions, Inc.*, No. 2:20-cv-00189 (E.D. Tex. Oct. 22, 2021) (excluding Mr. Schoettelkotte's opinions where he "ha[d] no basis to opine" on the issue.).

## VI.    CONCLUSION

For the reasons set forth above, FN respectfully requests the Court exclude from trial Mr. Schoettelkotte's improper opinions on trademark confusion and likelihood of confusion as well as his apportionment percentages.

Respectfully submitted, this 11th day of April, 2025.

By: */s/ Robert C. Van Arnam*
Robert C. Van Arnam (N.C. Bar No. 28838)
Andrew R. Shores (N.C. Bar No. 46600)
Carmelle F. Alipio (N.C. Bar No. 54738)
Aaron T. Fadden (N.C. Bar No. 59495)
**WILLIAMS MULLEN**
P.O. Box 1000
Raleigh, NC 27602-1000
Telephone: (919) 981-4000
Fax: (919) 981-4300
rvanarnam@williamsmullen.com
ashores@williamsmullen.com
calipio@williamsmullen.com
afadden@williamsmullen.com

*Attorneys for Plaintiffs FN Herstal, S.A. and
FN America, LLC*

18

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing document is in compliance with Local Rule 7.3(d) and does not exceed limit of 6,250 words, as calculated by Microsoft Word.

This, the 11th day of April, 2025.

By: */s/ Robert C. Van Arnam*
Robert C. Van Arnam

## CERTIFICATE OF SERVICE

I certify that on this day, I electronically filed the foregoing document using the Court's CM/ECF system, which will send a notification of such filing to all counsel of record.

This, the 11th day of April, 2025.

By: */s/ Robert C. Van Arnam*
Robert C. Van Arnam (N.C. Bar No. 28838)
**WILLIAMS MULLEN**
P.O. Box 1000
Raleigh, NC 27602-1000
Telephone: (919) 981-4000
Fax: (919) 981-4300
rvanarnam@williamsmullen.com