IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| FN HERSTAL, S.A., and<br>FN AMERICA, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>STURM, RUGER & CO., INC.,<br><br>Defendant. | ) | 1:24-cv-218 |

**ORDER**

Presently before this court are multiple motions to seal from both parties. (Docs. 50, 55, 72, 78, 86, 92, 98.) For the reasons stated herein, this court will grant each motion. To the extent that Plaintiffs' first motion, (Doc. 55), includes material addressed in Plaintiffs' amended motion, (Doc. 98), this court will seal the unredacted documents filed in conjunction with both motions, (see Docs. 57, 58, 99.)[1]

"It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978) (footnotes omitted). "The political branches of government claim legitimacy by

[1] The substantive motions associated with these motions to seal remain under advisement with this court.

election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like a fiat and requires rigorous justification." Doe v. Pub. Citizen, 749 F.3d 246, 266 (4th Cir. 2014) (quoting Hicklin Eng'g, L.C. v. Bartell, 439 F.3d 346, 348 (7th Cir. 2006)). "[D]ocuments filed with the court are 'judicial records' if they play a role in the adjudicative process, or adjudicate substantive rights." In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(d), 707 F.3d 283, 290 (4th Cir. 2013). Because the documents at issue here were "filed with the objective of obtaining judicial action or relief," they are judicial records.[2] See United States ex rel. Oberg v. Nelnet, Inc., 105 F.4th 161, 171, 173 n.10 (4th Cir. 2024) (citation omitted).

"The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." Va. Dep't of State Police

[2] This court also finds that the threshold notice issue is satisfied. Before sealing judicial records, this court must give the public notice and a reasonable opportunity to challenge the request to seal. Va. Dep't of State Police v. Wash. Post, 386 F.3d 567, 576 (4th Cir. 2004). This notice requirement is satisfied when the court dockets the request to seal "reasonably in advance of deciding the issue." Stone v. Univ. of Md. Med. Syst. Corp., 855 F.2d 178, 181 (4th Cir. 1988) (quoting In re Knight Publishing Co., 743 F.2d 231 (4th Cir. 1984)). Here, each document was publicly filed on the docket, thereby allowing members of the public to object.

v. Wash. Post, 386 F.3d 567, 575 (4th Cir. 2004) (citation omitted). Courts analyze whether the First Amendment "provides a right of access to a judicial proceeding or record" by using an "experience and logic" test. Courthouse News Serv. v. Schaefer, 2 F.4th 318, 326 (4th Cir. 2021). This test considers whether material "has historically been open to the press and general public," and if "public access plays a significant positive role in the functioning of the particular process in question." Id. (cleaned up) (quoting Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 8–10 (1986)). When the First Amendment is implicated, "a district court may restrict access only on the basis of a compelling governmental interest, and only if the denial [of access] is narrowly tailored to serve that interest." Va. Dep't of State Police, 386 F.3d at 575 (internal quotation marks and citation omitted). "The burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons in support of its position." Id. (citation omitted).

Unlike the First Amendment which provides greater substantive protections but only applies to "particular judicial records and documents," Stone v. Univ. of Maryland Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988), the common law "presumptive right of access extends to all judicial documents

and records." Pub. Citizen, 749 F.3d at 265–66. This presumption "can be rebutted only by showing that 'countervailing interests heavily outweigh the public interests in access.'" Id. at 266 (quoting Rushford v. New Yorker Mag., Inc., 846 F.2d 249, 253 (4th Cir. 1988)). When considering whether countervailing interests heavily outweigh the presumption of access, courts must balance the following factors: "whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." In re Knight Publ'g Co., 743 F.2d 231, 235 (4th Cir. 1984) (citing Nixon, 435 U.S. at 597–608)).

Corporate entities "may possess a strong interest in preserving the confidentiality of its proprietary and trade-secret information, which in turn may justify partial sealing of court records." Pub. Citizen, 749 F.3d at 269. Courts recognize confidential business information as an exception to both rights of access when the information "might harm a litigants competitive standing." SmartSky Networks, LLC v. Wireless Sys. Sols., LLC, 630 F. Supp. 3d 718, 732–33 (M.D.N.C. 2022) (citation omitted) (collecting cases). To determine whether the

information should be held under seal, courts consider: whether the information is confidential; whether disclosure would harm a corporate entity's "competitive standing or otherwise harm its business interests;" whether "the motion is narrowly tailored;" and whether the corporate entity has articulated a compelling interest in non-disclosure that "heavily outweighs the public's interest in access to the information." Syngenta Crop Prot., LLC v. Willowood, LLC, No. 1:15-CV-274, 2017 WL 6001818, at *3 (M.D.N.C. Dec. 4, 2017). "In weighing the competing interests, the Court considers, among other things, whether access to the evidence is needed to understand what happened at trial and the degree of harm that disclosure would be likely to cause." Id.

After considering the information disclosed and the interests articulated by the parties, this court finds that sealing is appropriate for the documents identified in the parties' motions.

## I. Defendant's First Motion

Defendant first moved to seal "exhibits to the Declaration of Patrick Rodgers" with Plaintiffs' consent. (Doc. 50 at 1.) Redacted copies of the exhibits were filed in support of Defendant's motion for summary judgment, (Doc. 38). (Docs. 41, 42, 45, 46.) Defendant contends that the documents "relate to sensitive financial information, internal business strategy

and/or research, and/or licensing agreements." (Doc. 50 at 2.) These documents include an expert report from Ashley Hlebinsky, and deposition testimony and exhibits from John Freiling, Daniel Hines, Chris Cole, Benjamin Voss, and Dana Trexler. (Id. at 2–3) Defendant also moved to seal an exhibit introduced during Mark Gurney's deposition that "discloses sensitive financial projections related to a new product in development at the time." (Id. at 3–4.) Along with its motion, Defendant filed a declaration from Deputy General Counsel Patricia Shepard explaining the information shared and its relationship to the case.

This court finds that sealing is appropriate. Because the exhibits were attached in support of Defendant's motion for summary judgment, the First Amendment right of access applies. Pub. Citizen, 749 F.3d at 267. The public's right of access is overcome by Defendant's interest in protecting its competitive standing. The information Defendant provided contains business plans that, if disclosed, would provide an advantage to competitors. Defendant did not file under seal all exhibits provided in support of summary judgment — only certain exhibits, (see, e.g., Doc. 41-6), or specific portions of exhibits, (see, e.g., Doc. 42-23). Defendant filed unredacted versions under seal and prepared public versions of its exhibits. Defendant's

request is therefore narrowly tailored and sealing is appropriate. See Syngenta, 2017 WL 6001818, at *5.

## II. Plaintiffs' First Motion

Following Defendant's first motion to seal, Plaintiffs moved to seal materials accompanying two Daubert motions filed by Plaintiffs, (Docs. 48, 53). (Doc. 55.) Plaintiffs explained that in the filings, Plaintiffs "include[d] citations to a study performed by [Plaintiffs] concerning [Plaintiffs'] customers and their buying considerations and brand awareness." (Id. at 1.) Defendant did not oppose Plaintiffs' motion. Instead, in response, it sought to seal additional material contained in Plaintiffs' filings. (Doc. 65 at 2.) Specifically, Defendant sought to seal "certain portions of Exhibit B to the Schoettelkotte Daubert."[3] (Id.)

Plaintiffs later amended their motion to seal to include portions of Defendant's expert report that reference Plaintiffs' expert report. (Doc. 98 at 2.) Plaintiffs explain that support for the underlying Plaintiffs' expert material contained in Defendant's expert material "was not included in support of the original Motion to Seal." (Id. (citing Doc. 55).) To summarize,

---

[3] To the extent that the parties seek to seal different material within the same document, the parties have identified their proposed confidential information with different colors. (Doc. 56 at 2.)

the parties seek to seal (1) portions of Plaintiffs' memorandum in support of the Daubert motion for Schoettelkotte (Doc. 54),[4] (2) certain exhibits filed by Plaintiffs in support of their Daubert motion for Schoettelkotte, (Docs. 54-2, 54-3, 54-5, 54-7, 54-8), (3) an exhibit filed in support of Plaintiffs' Daubert motion for Hlebinsky, (Doc. 49-4), (4) portions of an exhibit filed by Plaintiffs in support of their Daubert motion for Schoettelkotte, (Doc. 54–2), and (5) portions of Schoettelkotte's report containing references to Trexler's report, (Doc. 54–2). These requests will be granted.

As with Defendant's first motion, both parties support sealing. The parties prepared public versions of each document, and the requests to seal are limited to either certain exhibits or certain portions of specific exhibits. Unlike the previous motion which was raised in connection with a motion for summary judgment, the material raised in this motion was used to exclude certain expert opinions and testimony. Therefore, the "right of access at issue arises under the common law." Lord Corp. v. S & B Tech. Prods., Inc., No. 5:09-CV-205-D, 2012 WL 895947, at *1 (E.D.N.C. Mar. 15, 2012).

[4] Citations in this section are to the publicly filed, redacted versions of the parties' materials.

Under the common law right of access, this court finds that the material should be sealed. In the declaration submitted by Plaintiffs, Vice President and General Counsel Phyllis Andes explains that the material identified by the parties either states or discusses information Plaintiffs obtained from a consumer behavior study. (Doc. 56-1.) This court agrees that as a matter of consumer behavior, this information required significant resources to obtain which, if disclosed, could give competitors an understanding of consumer preferences and interests towards their own products. Moreover, because the information also incorporates Plaintiffs' marketing strategies, the material would provide access to confidential information that competitors could use against Plaintiffs in the future. Therefore, this court finds that sealing is appropriate and the identified exhibits shall remain under seal.

## III. **Defendant's Second Motion**

Defendant opposed Plaintiffs' Daubert motions by filing a response brief, declaration, and supporting exhibits for both Schoettelkotte and Hlebinsky. (Docs. 68-71.) Defendant then moved to seal certain material provided in its response to Plaintiffs' motions. (Doc. 72.) Plaintiffs consented to Defendant's second sealing motion, (id.), and Defendant provided

both redacted copies available to the public, (Docs. 68–71) and unredacted copies filed under seal, (Docs. 73–75).

Defendant argues that portions of the response material should be sealed because it "discusses information pertaining to an internal business study performed by [Plaintiffs], which [Plaintiffs] has designated highly confidential attorneys' eyes only." (Doc. 72 at 2.) For the reasons previously discussed, this court finds that the common law right of access attaches to these documents, see Lord Corp., 2012 WL 895947, at *1, and sealing is appropriate to protect Plaintiffs' competitive standing.

Beyond the material related to the consumer study, Defendant argues that the remaining material "pertain[s] to [Defendant's] highly confidential financial figures, which, if revealed, would give others in the industry a competitive advantage because the figures and information can be used to project future sales." (Id. at 3.) As explained by Patricia Shepard, Defendant "has never made this information public, and it keeps these financial figures confidential." (Doc. 73 at 1.) This court recognizes that "[c]ourts often determine the that sensitive and confidential nature of financial information warrants the sealing of such materials," Bon Vivant Catering, Inc. v. Duke Univ., No. 1:13CV728, 2016 WL 7638284, at *2

(M.D.N.C. June 14, 2016), and finds that sealing here is appropriate to prevent the public disclosure of confidential financial information. This court also finds that the redacted versions filed publicly are narrowly tailored to prevent the disclosure of sensitive business information.

## IV. <u>Plaintiffs' Second Motion</u>

Plaintiffs also seek to seal material filed in response to Defendant's motion for summary judgment, (Doc. 38). (Doc. 78.) Plaintiffs publicly filed redacted versions, (Doc. 77), and unredacted versions under seal, (Doc. 80). Plaintiffs "ask the Court to maintain under seal the [Plaintiffs'] Business and Financial Information, portions of Plaintiffs' Opp. to [Defendant's] SJ Brief, and the [Plaintiffs]-Third Party Policing Documents (collectively, '[Plaintiffs'] Confidential Materials')." (Doc. 79 at 2.) Defendant did not oppose Plaintiffs' second motion, and in response sought "to maintain under seal portions of two remaining documents identified in [Plaintiffs'] Motion to Seal, which pertains to [Defendant's] highly confidential business strategy and financial information, including [Defendant's] sales and profits and how those figures are tracked." (Doc. 81 at 1–2.)

Plaintiffs explain that the material is related to advertising and marketing strategies which disclose sales

figures, business and legal strategies related to trademarks, and other confidential information. (See Doc. 78 at 1–2.) For the "Business and Financial Information," (Doc. 79 at 2), Plaintiffs state that the material discloses "annual costs for advertising and marketing strategies and campaigns and annual sales figures in units and dollars." (Doc. 78 at 1.) This information was excerpted from Plaintiffs' expert material and Plaintiffs' responses to Defendant's interrogatories on "financial performance, revenues, and advertising spend." (Doc. 79 at 5–6.) The material "consist[s] of only limited excerpts narrowed [to] the specific information in support of [Plaintiffs'] argument." (Id. at 6.) For the "Third Party Policing Documents," Plaintiffs maintain that the documents "were prepared in support of [Plaintiffs'] efforts to protect and enforce its trademark rights on a business-to-business level and outside of public proceedings." (Id.)

Because the material was filed in opposition to summary judgment, the First Amendment right of access applies. Pub. Citizen, 749 F.3d at 267. This court finds that Plaintiffs articulate interests that overcome the First Amendment right of access. For the financial information, this court agrees with Phyllis Andes that both the excerpts from the expert report and the answers to the interrogatories disclose annual sales

figures. (Doc. 79-1 at 2.) Because this information is "of great importance" to Plaintiffs and "is not generally available to the public," this court finds that sealing is appropriate. Hanwha Azdel, Inc. v. C&D Zodiac, Inc., No. 6:12-CV-00023, 2013 WL 12314517, at *2 (W.D. Va. Aug. 7, 2013). For the policing documents, this court determines that the "information contained in these documents consists of [Plaintiffs'] business and legal strategies in connection with three of [Plaintiffs'] competitors." (Doc. 79-1 at 3.) Should this material become public, the "competitors may be able to leverage this information to partner with entities that can produce and market products identical or otherwise confusingly similar to [Plaintiffs'] products and unfairly compete with [Plaintiffs] in the marketplace." (Id.) This court therefore finds that disclosure of this information would harm Plaintiffs' competitive standing. See Bayer Cropscience Inc. v. Syngenta Crop Prot., LLC, 979 F. Supp. 2d 653, 656-57 (M.D.N.C. 2013).

This court also finds it appropriate to seal Plaintiffs' exhibits identified by Defendant. Like the material identified by Plaintiffs, Defendant explains that the information provided by Plaintiffs either "reveals highly confidential marketing and advertising consultations and decisions" or "reveals [Defendant's] revenues, costs, and profits." (Doc. 81-2 at 1-2.)

Such material, if public, would allow competitors to "understand product success" and "adjust future development plans" to Defendant's detriment. (Id. at 2.) Because the parties only seek to seal specific exhibits or partial excerpts from specific exhibits, this court finds that the motion is narrowly tailored to serve the parties' interests. Therefore, sealing is appropriate.

## V. Defendant's Third Motion

Defendant replied to Plaintiffs' response opposing summary judgment, (Doc. 84), and then moved to seal portions of its reply, (Doc. 86). This motion was filed with Plaintiffs' consent,[5] (id. at 1), and Defendant publicly filed redacted materials, (Docs. 84–85) and unredacted materials under seal, (Docs. 86–87). Defendant seeks to seal certain exhibits that relate to Plaintiffs' "sensitive financial information and/or internal business strategy/research." (Doc. 86 at 2.) Defendant also requests that part of its reply be sealed, including "one line of its reply that reveals its highly confidential sales figures" and "another line . . . that reveals [Defendant's] marketing and business strategies." (Id. at 2–3.)

[5] Plaintiffs filed a memorandum of law in support of Defendant's motion and requested the same documents sealed as Defendant. (See Doc. 97 at 2.)

While this court is mindful that "indiscriminate[]" references to business interests in briefing may not justify sealing, see Adjabeng v. GlaxoSmithKline, LLC, No. 1:12-CV-568, 2014 WL 459851, at *3 (M.D.N.C. Feb. 5, 2014), this court finds that Patricia Shepard's sworn declaration articulates an interest, supported by evidence, that overcomes the right of public access. Shepard explains that "[s]pecifically, the information sought to be sealed reveals the amount of [Defendant's] SFAR that have been sold in the United States, as well as highly confidential communications related to the selection of the SFAR name." (Doc. 86-2 at 1.) After reviewing the materials filed under seal, this court agrees that the financial information and marketing decisions identified by the declarants constitute sensitive business information that is part of Defendant's core business operations. Because the exhibits have been publicly filed with narrow redactions, this court finds that exhibits are narrowly tailored to prevent the disclosure of sensitive business information. Therefore, sealing is appropriate.

## VI. Plaintiffs' Third Motion

Following Defendant's responses to Plaintiffs' Daubert motions, (Docs. 68, 70), and Plaintiffs' motion for partial summary judgment, (Doc. 67), Plaintiffs replied. (Docs. 89-91.)

Plaintiffs moved to seal portions of its Schoettelkotte Reply, (Doc. 90), and summary judgment reply, (Doc. 91). (Doc. 92 at 1.) Defendant consented to this motion, (Doc. 96), and Plaintiffs publicly filed redacted versions while also filing unredacted versions under seal.

Plaintiffs explain that the Schoettelkotte material references the consumer study "that Plaintiffs submitted with their opening Memorandum in Support of the Schoettelkotte Motion." (Id. (citing Docs. 54-3, 58-3).) Thus, the material "is the subject, in part, of Plaintiffs' previous Consent Motion to Seal." (Id. (citing Doc. 55).) Plaintiffs also explain that the summary judgment reply material "includes a quotation from an email designated confidential by [Defendant] that was submitted with Plaintiffs' Opposition to [Defendant's] Motion for Summary Judgment." (Id. at 2 (citing Docs. 77-11, 80-11).) This "email at issue was the subject, in part, of Plaintiffs' previous Consent Motion to Seal its Opposition to [Defendant's] Motion for Summary Judgment." (Id. (citing Doc. 78).) Defendant confirms that "[t]he email, previously filed under seal, is the subject of [Plaintiffs'] prior consent motion to seal its opposition to [Defendant's] summary judgment motion." (Doc. 96 at 1 (citing Doc. 78).) Therefore, for the reasons discussed above, this court finds sealing appropriate.

**IT IS THEREFORE ORDERED** that the motions to seal addressed herein, (Docs. 50, 55, 72, 78, 86, 92, 98), are **GRANTED.** The parties' redacted filings are proper as currently filed. The parties' unredacted filings, (Docs. 52 through 52-28; Docs. 57 through 57-6; Docs. 58 through 58-9; Doc. 66; Doc. 74; Docs. 75 through 75-3; Doc. 76; Docs. 80 through 80-23; Doc. 82; Doc. 87; Docs. 88 through 88-13; Doc. 93; Doc. 94; Doc. 99), may remain under seal.

This the 24th day of March, 2026.

William L. Osteen, Jr.
United States District Judge